## VEEDER v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.　March 9, 1918.)

No. 2591.

1. SEARCHES AND SEIZURES ⬤➤7—SEARCH WARRANTS—ISSUANCE.
　　Under Const. Amend. 4, protecting citizens from unreasonable searches, one's premises cannot be forcibly searched by the suspicious and curious; nor can a disinterested officer of the law search premises, unless armed with a search warrant.

⬤➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SEARCHES AND SEIZURES ☞3—SEARCH WARRANTS—ISSUANCE.

No search warrant should be issued, unless the judge to whom application is made has been furnished with facts under oath tending to establish probable cause for issuance of the search warrant.

3. SEARCHES AND SEIZURES ☞3—ISSUANCE—PROBABLE CAUSE.

The finding of the probable cause for the issuance of a search warrant is one exclusively for the court, and not for the affiant or deponent seeking the issuance of the same.

4. SEARCHES AND SEIZURES ☞3—ISSUANCE—PROBABLE CAUSE.

Act June 15, 1917, c. 30, contemplates the issuance of search warrants only when felonies have been committed that are presently prosecutable within the United States, and does not warrant the issuance of search warrants for the seizure of property, etc., used in felonies long since barred by limitations.

5. SEARCHES AND SEIZURES ☞3—AFFIDAVITS—SUFFICIENCY.

Under Const. Amend. 4, prohibiting unreasonable searches, and Act June 15, 1917, c. 30, providing for search warrants, etc., an affidavit and deposition for search warrants to examine books, memorandums, etc., to discover a conspiracy between packing companies for the hoarding of food, etc., *held* insufficient to show probable cause, authorizing issuance of the warrant.

6. SEARCHES AND SEIZURES ☞3—DENIAL OF WARRANT—EFFECT.

The denial of a search warrant on the ground of the insufficiency of the affidavit and deposition is not a bar to further proceedings.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Proceeding by the United States of America for the issuance of a search warrant for the examination of books, etc., in the possession of Henry Veeder. The search warrant was issued, and Veeder brings error. Reversed, with direction to quash the search warrant.

Elwood G. Godman and John J. Healy, both of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Joseph B. Fleming, both of Chicago, Ill., for the United States.

Before BAKER, KOHLSAAT, and EVANS, Circuit Judges.

BAKER, Circuit Judge. This writ of error challenges the sufficiency of the affidavit and deposition on which a search warrant was issued under title 11 of the act of June 15, 1917 (40 Stat. 228, c. 30).

By the Fourth Amendment to the Constitution the people declared the limit beyond which Congress may not go in authorizing search warrants, namely:

"The rights of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This limitation was clearly observed in the act in question.

Section 2 defines the property and papers that may be seized as follows:

(1) "When the property was stolen or embezzled in violation of a law of the United States."

(2) "When the property was used as the means of committing a felony; in which case it may be taken on a warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be."

(3) "When the property or any papers is possessed, controlled or used in violation of section 22 of this title."

Section 22, so referred to, reads thus:

"Whoever, in aid of any foreign government, shall knowingly and willfully have possession of or control over any property or papers designed or intended for use or which is used as the means of violating any penal statute, or any of the rights or obligations of the United States under any treaty or the law of nations, shall be fined not more than $1,000 or imprisoned not more than two years, or both."

Sections 3 and 5 prescribe the character of application that must be made for search warrant:

Section 3: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

Section 5: "The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

McIsaac, an examiner in the service of the Federal Trade Commission, made an affidavit:

"That he has good reason to believe, and does verily believe, that in and upon certain premises within said district and division, to wit, in suite 1200 in the building at 76 West Monroe street, in the city of Chicago, known as the Ft. Dearborn Bank Building, said suite being the offices occupied by one Henry Veeder, there has been and now is located and concealed certain property, to wit, books of account, minute books, letterpress copy books, ledgers, journals, cash books, day books, memorandum books, bank books, check books, receipt books and other documents, which other documents are more·. particularly enumerated, described and indexed by words, letters and figures, as follows, to wit: [Then follows a list of references to letter files, and document files, comprising about 2,000 items] which said property has been ·used as a means of committing certain felonies; that is to say, the felony on the part of Swift & Company, a corporation organized under the laws of the state of Illinois, of storing, acquiring and holding for the purpose of limiting the supply thereof to the public, and affecting the market price thereof in commerce, among the several states, of certain articles suitable for human food, to wit, meats, canned vegetables, canned fruit, canned fish, poultry, cheese, butter, eggs and oleomargarine; the felony on the part of said corporation of willfully making false entries and statements of fact in certain reports pertaining to the ownership and control of subsidiary corporations by said corporation, which the Federal Trade Commission required it to make under subdivision (B) of· section 6 of the act approved September 26, 1914, entitled An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes; the felony on the part of said corporation of willfully making false entries in divers accounts, records, and memoranda kept by said corporation of all facts and transactions appertaining to the business of said corporation, it being a corporation subject to said act of Congress; the felony on the part of said corporation of willfully neglecting and failing to make or causing to be made full, true, and correct entries in said accounts, records, and memoranda of all facts and transactions appertaining· to the business of said corporation; and the felony of engaging in a conspiracy with Armour & Company, Morris & Company, Wilson & Company, Inc., Cudahy & Company, and with divers other corporations, and divers in-

dividuals and partnerships to defraud the United States through and by means of collusive bidding upon contracts to be let to the lowest bidder to furnish to the United States large quantities of meats, hides, leather, canned goods, and other commodities for the use of the military and naval forces of the United States."

As illustrative of the wide scope of the list included in the affidavit and covered by the search warrant, the following items are noted:

Anthony, D. M., for memorial papers see In Memoriam file............A- 37
Accidents Swift & Company...............................................A- 26
Attorney's Lien .........................................................A-135
British income tax ......................................................A-231
Cases, Ref. to pending and disposed of cases............................A- 58
Chicago Daily Law Bulletin..............................................A- 98
Chicago Law Institute ..................................................A-114
Law Books ..............................................................A- 80
Lost Bonds .............................................................A-103
Purchase of—Southeastern Reporter, Northwestern Reporter, South-
    western Reporter ...................................................A-190
Smoke violation, Chicago ...............................................A- 52
Wide tire ordinance, Chicago............................................A- 34
Adamson Law ...........................................................  644
Estate of Samuel W. Allerton...........................................  401
Cook County Employés' Benevolent Ass'n.................................  590
Deep waterway, Ill.....................................................   42
Estate of Theodore Newcomber...........................................  613
Inheritance tax laws of various states.................................  658
Kenwood Evangelical Church ............................................  367
Lake Forest University ................................................  146
Office keys ...........................................................  400
U. S. Supreme Court ...................................................  275
West Point Academy ....................................................  638
West Skokie drainage district .........................................  146

McIsaac's deposition is as follows:

"Q. State, if you know, whether there are certain papers and documents there in the office of Mr. Veeder, relating to Swift & Company.

"A. Yes, sir; there are.

"Q. Just state, if you will, what those papers and documents are.

"A. There are a large number of papers.

"Q. Also state the occasion of your going and seeing them there.

"A. I made a partial examination of the papers of Henry Veeder, and he has a large quantity of files, among the papers showing that they have been used in the commission of various felonies, one of them being in connection with the alteration of the books of Swift & Company, and other companies; some of them concerning violations of law that would make them guilty at this time of hoarding not only beef, but of storing food products with the ultimate purpose of enhancing the prices thereof.

"Q. What food?

"A. Canned goods, canned fish, poultry, cheese, butter, eggs, all kinds of canned vegetables, and other foods. There are also papers there which show the false entry or various false entries, made in books, account books, and papers required under the Federal Trade Commission Act.

"Q. Books of whom?

"A. Books of Swift & Company in the possession of Henry Veeder.

"Q. What else?

"A. There are other records which have been used in the furtherance of a conspiracy, between Swift & Company, Armour & Company, Morris & Company, Cudahy & Company and Wilson & Company, for the purpose of de-

252 F.—27

frauding the United States government in bidding upon contracts for the supply of hides, foods, leather, etc., for the government.

"Q. What else did you see there?

"Judge Landis: You say you have seen these papers?

"A. I have seen some and have had a glance at others, which I was not permitted to inspect in detail, and apparently there are a great number of files there which relate to all these matters."

[1-5] A brief statement of the applicable principles of law will suffice, for they are so well settled, so obvious from a reading of the constitutional and statutory provisions in question, so founded in the instinctive sense of natural justice, that no elaboration of the grounds therefor is needed.

One's person and property must be entitled, in an orderly democracy, to protection against both mob hysteria and the oppression of agents whom the people have chosen to represent them in the administration of laws which are required by the Constitution to operate upon all persons alike.

One's home and place of business are not to be invaded forcibly and searched by the curious and suspicious; not even by a disinterested officer of the law, unless he is armed with a search warrant.

No search warrant shall be issued unless the judge has first been furnished with facts under oath—not suspicions, beliefs, or surmises—but facts which, when the law is properly applied to them, tend to establish the necessary legal conclusion, or facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law.

The finding of the legal conclusion or of probable cause from the exhibited facts is a judicial function, and it cannot be delegated by the judge to the accuser.

No search warrant should be broader than the justifying basis of facts. For example, if a murder has been committed by means of a shot from a gun and by no other means, the search warrant should not direct the officer to enter the accused's home and seize the family register of births and deaths. And as the serving officer has no discretion in executing the search warrant in its entirety, the householder is entitled to have the search warrant quashed.

It is not every kind of property that may be seized under a search warrant. Limited by McIsaac's accusation, the statute applies only to property that "was used as the means of committing a felony." By exclusion, therefore, papers and documents which afford evidence that a felony has been committed, but which were not the means of committing it, are immune from seizure.

Applying these principles to McIsaac's affidavit, we observe that not a single statement of fact is verified by his oath. All he swears to is that "he has good reason to believe and does verily believe" so and so. He does not swear that so and so are true. He does not say why he believes. He gives no facts or circumstances to which the judge could apply the legal standard and decide that there was probable cause for the affiant's belief. There is nothing but the affiant's application of his own undisclosed notion of the law to an undisclosed state of facts. And under our system of government the accuser is not permitted to be also the judge.

Assuming that the "other documents," which are listed under reference letters and figures, are described with the particularity required by the statute, we observe that the precedingly mentioned "books of account, minute books, letter press copy books, ledgers, journals, cash books, day books, memorandum books, bank books, check books, and receipt books," are only generically described.

We observe, too, that McIsaac states his belief that "said property was used as a means of committing certain felonies," without stating the basis of his belief that the various items were so used. If the facts were disclosed, they might or they might not afford probable cause for believing that Veeder's In Memoriam file, his lists of law books, his copies of the smoke and the wide tire ordinances of Chicago, his office keys, etc., were the means used in committing the packers' assumed crime of controlling the price of beef.

Further we notice that neither time nor place is laid for the unnamed acts that are supposed to constitute felonies. We take it as unquestionable that the statute contemplates the issuance of search warrants only when felonies have been committed that are presently prosecutable within the United States. We assume that no judge would issue a search warrant directing the officer to break into a museum and seize and carry away the dagger Brutus used in assassinating Caesar. The district attorney suggests that we must take judicial notice of the fact that some of the criminal statutes which are believed to have been violated were enacted within the past three years. True, but there is nothing in the record to show that McIsaac did not believe that such statutes could be used retroactively to punish acts done generations ago.

Turning to McIsaac's deposition, we note his statement of fact that there are in Veeder's office many papers and documents relating to Swift & Company, and that he has seen some and had a glance at others. But he utterly fails to state what he saw. He gives a mixed legal and fact opinion that the undisclosed things he saw establish that many papers and documents were used in the commission of various felonies, including conspiracy, false entries, and hoarding food. Neither with respect to the authorization of a search warrant nor the particularity with which instruments of crime must be described is the deposition any better than the affidavit.

We thoroughly agree with the learned District Judge that the shield of the Constitution does not protect property that has been used in the commission of a felony, and that such outlaw property is subject to

seizure by search warrant under this statute. But we find that the Constitution and this statute forbid a search warrant unless the issuing magistrate shall first properly draw the necessary legal conclusion from facts duly presented to him under the oath of the accuser. And in the record now before us we find no such presentation of facts.

[6] Needless to say, the present judgment is not a bar to further proceedings.

Reversed, with direction to quash the search warrant.

