## UNITED STATES v. KELLY et al.

(District Court, E. D. North Carolina. December 9, 1921.)

**Searches and seizures ⬤⟞7—Search warrant issued without evidence of probable cause held illegal.**

 A search warrant issued solely on an affidavit that affiant "has good reason to believe and does verily believe" that evidence of a crime against the United States "is stored and concealed in certain farms and buildings thereon," without the statement of any facts tending to establish, or finding of probable cause, *held* illegally issued, in violation of the Const. U. S. Amend. 4, and of Act June 15, 1917, tit. 11, §§ 4–6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼d–10496¼f).

Criminal prosecution by the United States against C. J. Kelly and others. On motion by defendant named to quash search warrant. Granted.

E. F. Aydlett, U. S. Dist. Atty., of Elizabeth City, N. C.

A. A. F. Seawell and E. L. Gavin, both of Sandford, N. C., and Jones & Jones, of Raleigh, N. C., for defendant C. J. Kelly.

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CONNOR, District Judge. Before the case was called for trial or the jury was impaneled, defendant C. J. Kelly moved the court to quash the search warrant issued by W. P. Batchelor, Esq., United States commissioner, for that, among other causes assigned, the affidavit upon which the warrant was issued does not conform to article. 4, Amendments of the Constitution, and the provisions and requirements of chapter 30, tit. 11, §§ 3 and 5, ratified June 15, 1917 (40 Stat. p. 228 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼c, 10496¼e]), in that:

First. That said affidavit does not particularly describe the property and the place to be searched as required by said act.

Second. That said affidavit does not set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist as required by said act.

The affidavit of D. H. Graham, special agent, upon which the search warrant was issued, avers:

"That he has good reason to believe and does verily believe that evidence of the transportation of stolen automobiles in interstate commerce has been, and is, stored and concealed in certain farms and buildings thereon, being the premises of one C. J. (Big Curt) Kelly and being situate in the county of Lee, state of North Carolina, and district aforesaid, the said evidence consisting of certain automobiles to wit: [Giving a list of the property.]"

The warrant follows the recital in the affidavit, but does not find, as a fact, that probable cause for the belief of said Graham exists, etc.

Passing, for the present, the first ground assigned for the motion, the description of the place and property to be searched, and, proceeding to the consideration of the second ground, we find that the act provides:

That a search warrant authorized by the act may be issued by a judge of the United States District Court or United States commissioner.

That the grounds upon which it may be issued is "when property has been stolen or embezzled in violation of the law of the United States, in which case it may be taken on the warrant, from any house or other place in which it is concealed or from the possession of the person by whom it was stolen or from any person in whose possession it may be."

"When the property was used as the means of committing a felony," etc. Section 2 (section 10496¼b).

Section 3 (section 10496¼c) provides that the warrant "cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

Section 4 (section 10496¼d) provides that the commissioner must, before issuing the warrant, examine on oath the complainant and any witnesses he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

Section 5 (section 10496¼e) provides that the affidavits or depositions must "set forth the facts tending to establish the grounds of

the application or probable cause for believing that they exist." Fed. Stat. Annotated Supplement 1918, p. 128.

It is uniformly held by the Supreme Court of the United States that the power, with its express limitations, conferred upon any officer of the government to issue a search warrant, is found in the Fourth Amendment to the Constitution, and that any statute prescribing the method in which such warrants may be issued must be read and construed in the light of and conform in all essential respects to the provisions of that article. Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and other cases. This is fundamental.

The authors of the act of 1917 manifestly had this truth in view in framing its several provisions. Because of the recent date of the enactment, the statute has not been under discussion or construction by the Supreme Court of the United States, and but few cases in that respect are found in the reports of the Circuit and District Courts. In Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338 (C. C. A. 7th Cir.), a motion was made, as here, to quash the search warrant upon similar grounds assigned in this motion. Circuit Judge Baker says:

"No search warrant shall be issued unless the judge [or commissioner] has first been furnished with facts under oath, not suspicions, beliefs, or surmises, but facts which, when the law is properly applied to them, tend to establish the necessary legal conclusion, or facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury.

"Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and in law.

"The finding of the legal conclusion or of probable cause from the exhibited facts is a judicial function and it cannot be delegated by the judge [or commissioner] to the accuser [of affiant]."

In re Tri-State Coal & Coke Co. (D. C. W. D. Pa.) 253 Fed. 605, Judge Thompson, after citing cases in which the general principles are discussed, says:

"These cases all recognize, not only the binding force of this constitutional provision, but its high necessity to protect the sanctity of the home and the privacies of life; that this protection is so broad and ample that it embraces all persons, even those accused of crime; and that the duty of giving it full effect rests upon all intrusted under our federal system with the enforcement of the laws. * * *

"Under section 5, tit. 11, the affidavits * * * must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

In State v. McDonald, 14 N. C. 468, Mr. Justice Daniel says that—

"Warrants to search for stolen goods are authorized by the principles of the common law." A search warrant in this state is to be granted only when a larceny is charged to have been committed. "It is not to be granted without oath made before a justice [of the peace] that a felony has been committed, and that the party complaining has probable cause to suspect that the stolen goods are in such a place, and he should show his reasons for the sus-

picion. * * * The justice * * * had jurisdiction to issue a warrant to search for stolen goods, and whether the facts set forth in the affidavit of the applicant * * * constituted a larceny of the goods was for his determination."

In Veeder's Case, supra, the affidavit, as in this case made by the agent of the government, stated that "he has good reason to believe and does * * * believe," etc. The criticism made by the judge of the affidavit applies with equal force here:

"He does not say why he believes. He gives no facts or circumstances to which the judge could apply the legal standard and decide that there was probable cause for the affiant's belief. There is nothing but the affiant's application of his own undisclosed notion of the law to an undisclosed state of facts. And under our system of government the accuser is not permitted to be also the judge. * * *

"We find that the Constitution and this statute forbid a search warrant unless the issuing magistrate shall first properly draw the legal conclusion from facts * * * presented to him under the oath of his accuser. And in the record now before us we find no such presentation of facts."

In both cases cited the warrant was quashed for the reason that no facts were stated in the affidavit upon which the commissioner did or could have found the essential jurisdictional fact that probable cause existed for the belief of affiant as required by the statute.

In United States v. Premises, etc. (D. C. Mont.) 246 Fed. 185, an application for a warrant to search the premises, particularly described, of one Carl Pahl, upon an affidavit of a government officer stating "that he has good reason to believe and does verily believe" that certain property, describing it, which has been unlawfully used to violate a federal statute, describing the offense which is made a felony, etc.

In denying the application, the District Judge says:

"Mere belief and suspicion are not enough; 'probable cause' within the meaning of the Constitution arising only from facts and circumstances sufficient to create in the minds of men of average prudence a reasonable belief that a crime has been committed, and that the guilty person or the instruments or fruits of crime are in certain premises. Then only can a warrant to search and seize issue. In the instant case there is no more than suspicion."

The judge refused to issue the warrant. An examination of the textbooks on criminal procedure, both English and American, discloses no suggestion that, either at common law or under any statute, a search warrant may be issued upon an affidavit in which only the belief or suspicion of the affiant is given as the basis for the application.

Sir Mathew Hale, after noting that Sir Edward Coke denied the power in the court to issue a search warrant, says:

"In the case of a complaint and oath of goods stolen, and that he suspects the goods are in such a house and show the cause of his suspicion, the justice may grant a warrant to search in those suspected places mentioned in his warrant." 2 Pleas of the Crown, 113.

This statement of the common law is quoted with uniform approval in every case which I have examined. That the power to issue the

warrant is dependent, not upon the applicant's suspicion or belief, however strong, but upon the finding by the judge, or other judicial officer, of the fact that the belief of the applicant is founded upon "probable cause," which is declared essential by the Constitution and the statute, clearly appears by reference to the sixth section of the act (section 10496¼f):

> "If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant."

There is no finding or suggestion of the existence of "probable cause" to believe, etc., or any other finding of fact or conclusion of law, but simply a recital that affiant swears that he "has reasonable cause to believe and does verily believe," thus basing the warrant entirely on affiant's statement that he has reasonable cause to believe.

It cannot be that the homes of citizens may be searched upon the "suspicion" or "belief" of an administrative officer that property desired to be used as evidence in a proposed criminal proceeding, unsupported by the statement of any facts upon which the commissioner could find "probable cause" for such suspicion or belief. To do so would be to make the express language of the Fourth Amendment to the Constitution of none effect.

The canon of construction of this guaranty of the sanctity of the home of the citizen from "unreasonable search and seizure" is laid down by Justice Bradley in Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 524, 29 L. Ed. 746, and uniformly approved:

> "Illegitimate and unconstitutional practices get their first footing * * * by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereupon. Their motto should be obsta principiis."

Several other grounds were urged in support of the motion to quash the warrant. Of the property alleged to be concealed was a number of letters, telegrams, and receipts, which were included in the search warrant. The sole value, and only purpose, of seizing these papers was to use them as evidence in such criminal proceedings as should upon further investigation be instituted against Kelly and such other persons as might be incriminated in the alleged transportation of stolen cars in interstate commerce. These papers could not, when seized, have been used as evidence against the accused and were of no value for any other purpose. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. ——; Honeycutt v. United States, 277 Fed. 939, 941 (C. C. A. 4th Cir.).

The use of search warrants incident to recent legislation with the frequent failure on the part of administrative officers and commissioners to observe the constitutional limitations and statutory regulations emphasizes the necessity for at least a reasonable observance of the constitutional limitations and statutory provisions in regard to their issuance and manner of execution.

Conceding that at times prompt action is necessary to detect and disclose crime and its perpetrator, the people have not committed to their officers any discretion, upon the plea of necessity to suspend or set aside their supreme law.

To this suggestion, made nearly 200 years ago, Lord Camden said:

"And with respect to the argument of state necessity, or a distinction that has been aimed at between state offenses and others, the common law does not understand that kind of reasoning, nor do our books take notice of any such distinction."

To the suggestion that the judges had the power to entertain such a suggestion the same great judge replied:

"If the King himself had no power to declare when the law ought to be violated for reason of state, I am sure we, his judges, have no such power, * * * whether this proceedeth from the gentleness of the law towards criminals or from a consideration that such a power would be more pernicious to the innocent than useful to the public, I will not say."

Such was the doctrine of the common law. The same principles are incorporated into the fundamental supreme law binding upon every department of the government. The language of the Constitution is too clear to be misunderstood and should not be misinterpreted:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."

A search and seizure made by authority of warrant, complying with the express language of this constitutional provision, is reasonable and legal; any other is unreasonable and illegal. Justice Bradley in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, gives an interesting history, sustained by liberal quotations from the celebrated opinion of Lord Camden in Entic v. Carrington (1752) 19 Howell's St. Trials, 1029, of the origin and use of search warrants in England. This opinion, he says, is regarded as "one of the permanent landmarks of the British Constitution." The learned justice says that the American statesmen of the Revolutionary period were familiar with "this monument of English freedom, and considered it as the true and ultimate expression of constitutional law." It was in the minds of those who framed the Fourth Amendment to the Constitution and was considered as sufficiently explanatory of what was meant by unreasonable seizures.

Lord Camden, delivering his judgment in the Carrington Case, says:

"Papers are the owner's goods and chattels; they are his dearest property; and, so far from enduring a seizure, that they will hardly bear an inspection."

To the suggestion that the right to search for and seize papers may be supported upon the same or similar reasons as the right to search for and seize stolen goods, which Sir Mathew Hale says "is necessary to detect and punish a felon," he says:

"The difference is apparent. In the one case I am permitted to seize my own goods which are placed in the hands of a public officer till the felon's conviction shall entitle me to restitution. In the other the party's own property is seized before and without conviction and he has no power to reclaim his goods even after his innocence is secured by acquittal."

Whether the power conferred by the act of 1917 (section 2 [2]) to issue a search warrant "when the property was used as the means of committing a felony; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be," for the purpose of using such property as evidence against the person charged with the felony, on his trial, is violative of the prohibitions of the Fifth Amendment, is not necessary upon this motion to decide.

The warrant directs the officer to whom it is directed to search for and seize articles, other than the property alleged to have been stolen, as evidence of the transportation of the automobiles.

If, as is held in the Gouled Case, supra, private papers cannot be seized when of value only as evidence, may other articles of property be so taken and used? The right to seize stolen property is based upon the fact that the felon has no title to it, but the same learned judge says this reason does not obtain when it is sought to seize the accused's "own property" to be used as evidence. The security guaranteed by the Fourth Amendment against unreasonable searches and seizures includes "persons, houses, papers and effects."

Excluding articles the possession of which is made unlawful and criminal by statute, such as counterfeiting tools or implements, gambling implements, and, under the Volstead Act, intoxicating liquor, the question recurs: May a search warrant authorize search for and seizure of property, the owning and possessing of which is lawful, and has no other than evidential relation to the alleged crime? Is the immunity confined to papers? This question does not appear to have been expressly decided. In Weeks' Case, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652. L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, no search warrant was issued. The same is true in Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. ——, in which the whisky sought to be used as evidence was taken without any search warrant.

Sir Mathew Hale confines the right at common law to issue a search warrant "to the case of a complaint on oath of goods stolen."

In Boyd's Case, Week's Case, and Gouled's Case, supra, the right to search for and seize property for purpose of evidence involved only papers.

Without further pursuing the inquiry regarding this question, it is sufficient, for the purpose of this motion, to say that the warrant is invalid for the reason that no facts were set out upon which the commissioner could find the existence of probable cause, which is declared essential both by the Constitution and the statute.

The warrant will be quashed and the marshal directed to return the property seized to the defendant.