FEDERAL TRADE COMMISSION v. P. LORILLARD CO.

SAME v. AMERICAN TOBACCO CO., Inc.

(District Court, S. D. New York. October 3, 1922.)

1. **Commerce** ☞48—**Federal Trade Commission Act relates to interstate commerce only.**

Federal Trade Commission Act Sept. 26, 1914 (Comp. St. §§ 8836a–8836k), was enacted under the power conferred on Congress by the commerce clause of the Constitution, and the Commission has no authority in respect to intrastate commerce or transactions.

2. **Constitutional law** ☞48—**To be construed so as to avoid doubt of constitutionality.**

A statute must be construed, if fairly possible, so as to avoid any doubt of its constitutionality.

---

☞For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

**3. Trade-marks and trade-names and unfair competition ⊂⊃80½, New, vol. 8A Key-No. Series—Powers of Federal Trade Commission.**

A resolution of the Senate directing the Federal Trade Commission to investigate and report the tobacco situation as to the domestic and export trade, etc., but without reference to any alleged violation of law, is not within the provision of Federal Trade Commission Act, § 6 (Comp. St. § 8836f), authorizing the Commission on direction of the President or either House of Congress to investigate and report the facts relating to any alleged violation of the anti-trust acts by any corporation, nor within the provision of section 9 (section 8836i), vesting District Courts with jurisdiction to issue writs of mandamus to compel compliance with the provisions of the act or any order of the Commission made in pursuance thereof, and in the investigation under said resolution neither the commission nor the court has authority to compel a private corporation to produce its books and papers for inspection and the making of copies thereof.

**4. Searches and seizures ⊂⊃7—Limitation of power of Trade Commission.**

While the Federal Trade Commission may make investigations, its visitorial power over private corporations must keep within the restrictions of the Fourth Constitutional Amendment. Congress could not grant, and did not intend to grant, to the Commission, an unlimited power of inquisition or an unlimited right of access to books and papers of private parties, not engaged in any public service or of search without basis of some facts tending to establish a charge of wrongdoing.

Petitions for mandamus by the Federal Trade Commission against the P. Lorillard Company, and against the American Tobacco Company, Inc. Denied.

William Hayward, U. S. Atty., of New York City, and W. H. Fuller, Chief Counsel for Federal Trade Commission, of Washington, D. C. (A. S. Barnes, of New York City, of counsel), for petitioner.

William D. Guthrie and William B. Bell, both of New York City (Bernard Hershkopf, of New York City, of counsel), for respondent P. Lorillard Co.

John Walsh, of Washington, D. C., and Junius Parker, of New York City (Jonathan H. Holmes, of New York City, of counsel), for respondent American Tobacco Co., Inc.

MANTON, Circuit Judge. These cases were argued together and will be considered in one opinion.

The petitioner in each of the above-named proceedings was granted an alternative writ of mandamus commanding the respondent to show cause why a peremptory writ should not issue directing that immediately it forthwith deliver into the possession of the Federal Trade Commission the accounts, books, records, documents, memoranda, papers, and correspondence of the respondent for inspection and examination and for the purpose of making copies thereof. The petition upon which the alternative writ was granted sets forth that on the 16th of September, 1921, a complaint was filed with the Federal Trade Commission against the respondent. The complaint alleged that the respondent in the conduct of its interstate commerce was indulging in practices which were in violation of the provisions of the Act of Congress of September 26, 1914 (38 Stat. 717 [Comp. St. §§ 8836a–8836k]), in that the respondent was using certain methods of business

⊂⊃For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

practices resulting in unfair competition, in that it was regulating and fixing or attempting to regulate and fix the prices at which the commodities sold by it should be resold by those to whom it had sold them, and was co-operating, aiding, and abetting others to successfully formulate and carry out a scheme or combination pursuant to which the resale prices of respondent's commodities should be fixed and maintained by those to whom respondent had previously sold its products or commodities. Further, that the Senate of the Congress of the United States by a resolution directed the Federal Trade Commission to investigate the tobacco situation in the United States as to the domestic and export trade, with particular reference as to the market price to producers of tobacco and the market price for manufacturing tobacco and the price of leaf tobacco exported, and to report to the Senate as soon as possible the result of such investigation. Petitioner then sets forth that at various times between September 29, 1921, and November 5, 1921, authorized agents of the petitioner, in its behalf, demanded of the respondent to produce and furnish to them at respondent's offices certain specified documentary evidence or written data, correspondence, and other paper writings which were then and there in the possession, custody, and control of the respondent so that copies thereof or parts thereof might be made. And the respondent, complying with the demands and pursuant to its duty, under the provisions of the Federal Trade Act, did produce for inspection and examination of petitioner's agents certain of the data commanded; but, in violation of provisions of the Federal Trade Act, it refused to produce for inspection and examination "certain documentary evidence, records, correspondence, and writings herein specified which were then and there in respondent's possession, custody, and control, and it refused to permit copies thereof to be made by petitioner." And it sets forth that it is necessary in the prosecution of its duty that such inspection and examination be granted to the petitioner's agents and that it is hindered in the performance of its duty and in the exercise of its power by the refusal of the respondent to grant such examination and inspection. Its prayer for relief is that "all papers and telegrams received by the American Tobacco Company (or P. Lorillard Company) from all of its jobber customers located at different points throughout the United States and also copies of all letters and telegrams sent by the American Tobacco Company (or P. Lorillard Company) to such jobbers during the period of January 1, 1921, to December 31, 1921, inclusive," be turned over for examination and inspection. Each respondent resists the application for a peremptory writ contending that the Federal Trade Commission is asserting authority which it does not possess in seeking to make an unlimited and unrestricted inspection with the right to copy all of the correspondence with its jobber customers, and that the Senate resolution directing the Federal Trade Commission to make the investigation referred to grants no authority for unlimited and unrestricted search with the right to copy the correspondence. It further contends that sections 5, 6, and 9 of the Federal Trade Commission Act (Comp. St. §§ 8836e, 8836f, 8836i) give no such authority of unlimited and unrestricted search and examination, and it is said that any

such construction or interpretation of the Federal Trade Commission Act would be in contravention of the Fourth Amendment of the Constitution guaranteeing the right of the people to be secure in their papers and effects against unreasonable searches and seizures, and that no warrant shall issue but upon probable cause supported by oath or affirmation. Thus the question is presented whether Congress can delegate visitorial powers under the commerce clause of the Constitution over private corporations engaged in interstate commerce to the extent of granting unlimited and unrestricted examination and inspection with the right to copy.

[1] By the Act of Congress of September 26, 1914, the Federal Trade Commission was created a body corporate. Its purposes were defined by the statute creating it, and its duties and powers and administration are referred to in sections 5, 6, and 9. It is provided by section 9 of the act (Comp. St. § 8836i) that—

"For the purposes of this act, the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corpora tion being investigated or proceeded against."

And section 6 of the act (section 8836f) provides:

"That the Commission shall also have power—(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers subject to the act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships."

The Constitution provides (article 1, § 8, cl. 3) that Congress shall have power to regulate commerce with foreign nations and among the several states.

Each respondent is conceded to be a private corporation engaged in selling tobacco and its products and is engaged in interstate and intrastate commerce. This investigation was commenced "for the purpose of ascertaining the facts relating to respondent's business." The business of each of the respondents is very extensive; its letters, papers, and other documents making it a business of thousands of letters per month. The affidavits submitted by the respondents set forth a mass of correspondence and other documentary evidence which, if the petitioner prevails in its alleged right to "full and complete access to any and all documentary evidence in the possession and control of the respondent," would, it is alleged, handicap the respondent in its business and entail considerable expense and difficulties. Much of the correspondence relates to transactions bearing upon intrastate commerce only. As to such of the correspondence as bears upon intrastate commerce, the petitioner is not entitled to examination, inspection, or copying any part thereof. The commerce clause of the Constitution granting power to the Congress to legislate as to the commerce permits only of legislation which has to do with interstate commerce. The Federal Trade Act forbids unfair practices in reference to the commerce of an interstate character only. Ward Baking Co. v. Federal Trade Comm. (C. C. A.) 264 Fed. 330. The commerce clause of the Consti-

tution vested in the Congress "a full and complete power to regulate commerce among the several states, for the strong arm of the national government may be put forth to brush away all obstacles to interstate commerce." In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. And "constitutional privileges do not change but their operation extends to new matters as modes of business and the habits of life of the peoples vary with each succeeding generation. The power is the same but it operates to-day upon modes of interstate commerce unknown to the fathers and will operate with equal force upon any new modes of such commerce which the future may develop." Gibbons v. Ogden, 9 Wheat. (22 U. S.) 1, 6 L. Ed. 23. The power of Congress to legislate embraces power not only to regulate and control that which is wholly interstate, but also that which even though intrastate affects the free flow of interstate commerce. Minn. Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. To regulate is the power to enact legislation directly affecting interstate commerce. United States v. Adair (D. C.) 152 Fed. 737. The Constitution having granted to the Congress plenary power to regulate or control commerce among the states, Congress may delegate such duties to investigate and learn conditions to a permanent administrative body.

[2] The validity of the Interstate Commerce Commission Act granting to that Commission the power to investigate facts relating to interstate transportation was considered in Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047. It has been held that the visitorial power of the federal government provided for in the act, over private corporations, must be restricted to activities of an interstate commerce character. Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Interstate Commerce Comm. v. Goodrich Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729; United States v. Basic Products Co. (D. C.) 260 Fed. 472. We must presume that the Congress did not intend by this legislation to invade the field reserved under the Constitution to the several states by interfering with transactions in intrastate commerce. "The statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854. See, also, United States v. D. & H. Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836.

[3] The resolution of the Senate provided that—

"The Federal Trade Commission be and is hereby directed to investigate the tobacco situation in the United States as to the domestic and export trade, with particular reference to the market price to producers for tobacco and the market price for manufactured tobacco and the price of leaf tobacco exported, and report to the Senate as soon as possible the result of such investigation."

This resolution has not the mandatory effect of statutory enactment with reference to the commerce clause of the Constitution, and the present application for the writ must rest upon the command of section 9 of the Federal Trade Commission Act (Comp. St. § 8836i), wherein

jurisdiction is granted to the District Courts of the United States "to issue writs of mandamus commanding any person or corporation to comply with the provisions of this act or any order of the Commission made in pursuance thereof." The resolution of the Senate does not come within the terms of the authority conferred by the statute in question. Under section 6 (section 8836f), power is conferred upon the Commission "upon the direction of the President or either House of Congress to investigate and report the facts relating to any alleged violations of the anti-trust acts by any corporation," but the language of this statute makes it necessary for one of the Houses of Congress to adopt a resolution for a direction to investigate, and the reporting of such investigation must be for alleged violations of the anti-trust acts. The quotation from the resolution of the Senate fails to indicate that it is founded upon any violation or alleged violation of the anti-trust law (Comp. St. § 8820 et seq.). It does not indicate that the Senate intended that any anti-trust law violation should be investigated by the Commission. If so, an apt expression to that effect could have been used. It cannot, therefore, be concluded that it was intended, in the language used, to investigate any violations of the anti-trust acts by any corporation. In any case, the power of the Federal Trade Commission cannot be broader than what Congress did or could delegate. The analogy of the cases arising under the powers of the Interstate Commerce Commission with that of the Federal Trade Commission's powers is pertinent. This was referred to in Beechnut Packing Co. v. Federal Trade Comm. (C. C. A.) 264 Fed. 885. A comparison of the statutes particularly setting forth the procedure under the two acts shows the similarity. In each any person may be compelled to appear and depose and produce documentary evidence in the same manner as witnesses may be compelled to appear and testify and produce documentary evidence before the Commission. Both Commissions are required to make findings in proceedings before them and the findings must be based upon the testimony given.

In the Harriman Case, 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253, Justice Holmes said:

"The Commission * * * is given power to require the testimony of witnesses 'for the purposes of this act.' The argument for the Commission is that the purposes of the act embrace all the duties that the act imposes and the powers that it gives the Commission; that one of the purposes is that the Commission shall keep itself informed as to the manner and method in which the business of carriers is conducted, as required by section 12; that another is that it shall recommend additional legislation * * * and that for either of these general objects it may call on the courts to require any one whom it may point out to attend and testify if he would avoid the penalties for contempt.

"We are of the opinion, on the contrary, that the purposes of the act for which the Commission may exact evidence embrace only complaints for violation of the act, and investigations by the Commission upon matters that might have been made the object of complaint. As we have already implied the main purpose of the act was to regulate the interstate business of carriers, and the secondary purpose, that for which the Commission was established, was to enforce the regulations enacted. These in our opinion are the purposes referred to; in other words the power to require testimony is limited, as it usually is in English speaking countries at least, to the only

cases where the sacrifice of privacy is necessary—those where the investigations concern a specific breach of the law. * * *

"If we felt more hesitation than we do, we still should feel bound to construe the statute not merely so as to sustain its constitutionality but so as to avoid a succession of constitutional doubts, so far as candor permits."

The Interstate Commerce Commission deals with quasi public corporations. But the phrase of the Federal Trade Commission Act considered, in view of the language in the Harriman Case, would indicate that the right to procure information in its investigations under the provisions of section 6 would not grant the unlimited search and inspection of correspondence with the right to copy the same in the absence of some specific complaint which would point out the materiality to that complaint of the particular correspondence and papers sought to be obtained.

[4] Reading sections 5, 6, and 9, I do not think that Congress intended, at the time of the enactment of this law, to go beyond the well-recognized principles of limitations with reference to searches and seizures guarded against by the Fourth Amendment of the Constitution. It is better extracted by the procedure long established in the courts in conformity with the constitutional guaranty against unlawful and unreasonable searches and seizures and the right of people to be secure in their papers and effects to deduce the intention that information should only be therefrom. The Fourth Amendment provides:

"The right of the people to be secure in their * * * papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This command of the Constitution, properly interpreted, is a prohibition against Congress granting powers to the Commission for unlimited searches and seizures of letters and documents. The act makes plain the duty of the Commission to gather, compile, and publish for use in its proceedings what may be voluntarily offered or submitted in response to request or demand. It may also make investigation independently, but the exercise of visitorial power over private corporations must keep within restrictions of the Fourth Amendment. "Neither branch of the legislative department, still less any merely administrative body, established by the Congress, possesses, or can be invested with, a general power of making inquiry into the private affairs of the citizen." Interstate Commerce Comm. v. Brimson, 154 U. S. 478, 14 Sup. Ct. 1134, 38 L. Ed. 1047.

As was said by Mr. Justice Brewer in Re Pacific Ry. Comm. (C. C.) 32 Fed. 241:

"There is no doubt that Congress may authorize a commission to obtain information upon any subject which, in its judgment, it may be important to possess. * * * But in its inquiries it is controlled by the same guards against the invasion of private rights which limit the investigations of private parties into similar matters."

It is the duty of the court to so construe the act as to save the statute from constitutional infirmity. Knights Templars' & Masons' Life

Indemnity Co. v. Jarman, 187 U. S. 197, 23 Sup. Ct. 108, 47 L. Ed. 139; U. S. v. D. & H. Co., 213 U. S. 407, 29 Sup. Ct. 527, 53 L. Ed. 836; Harriman v. Interstate Commerce Comm., 211 U. S. 407, 29 Sup. Ct. 115, 53 L. Ed. 253.

Section 6 (b) grants to the Commission the right to require corporations coming within its jurisdiction to make reports concerning their affairs and thus to furnish to the Commission such information as it may require. And subdivision (a) of section 6 calls upon the corporations in question to report upon specific matters as provided in subdivision (b). If the corporations fail in reporting or the reports are false, the Commission is entitled, upon properly showing the probable cause, to demand due disclosures and access to the inspection of any specific, necessary, and relevant papers, excluding such papers as may be privileged. In other words, there must appear to be some reasonable cause for a search such as a definite complaint charging a specific wrong and thus presenting an inquiry which would have reasonable and readily ascertainable limits. Such a construction of subdivisions (a) and (b) of section 6 would effectuate the intent of Congress and the procedure can be kept within constitutional limits. United States v. L. & N. R. Co., 236 U. S. 318, 35 Sup. Ct. 363, 59 L. Ed. 598; Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338. Such a construction would seem to be in accord with the discussions in the Senate when this legislation was enacted. See 51 Congressional Records, pt. 13, 63d Cong., Second Session, pp. 12747, 12800, 12806–11, 12918, 12927. It was not intended to grant an unlimited power of inquisition or an unlimited right of access to books and papers of private parties not engaged in any public service or a search without basis of some facts tending to establish a charge of wrongdoing.

It is now well established that a corporation is entitled to invoke the guaranties of the Fourth Amendment against unreasonable searches and seizures in as full a measure as would a person or partnership. Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Coastwise Lumber Co. v. United States, 259 Fed. 847, 170 C. C. A. 647.

In the papers submitted on this application, there is no showing of the existence of probable cause. The relief prayed for is in general terms and includes all papers and telegrams received by each respondent from its jobber customers located in different points throughout the United States and copies of all letters and telegrams sent by each respondent to such jobbers during the period from January 1, 1921, to December 31, 1921, inclusive. Such general demands made in other warrants of law, such as a subpœna duces tecum, have been condemned as not giving a reasonably accurate description of the papers wanted, either by date, title, substance, or subject to which they relate. Ex parte Brown, 72 Mo. 83, 37 Am. Rep. 426; Carson v. Hawley, 82 Minn. 204, 84 N. W. 746.

In Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, the court quoted with approval Judge Camden's language in Entick v. Carrington and Three Other King's Messengers, 19 Howell's State Trials, 1029, wherein he said:

(283 F.)

"Papers are the owner's goods and chattels; they are his dearest property; and are so far from enduring a seizure, that they will hardly bear an inspection; and though the eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and carried away the secret nature of those goods will be an aggravation of the trespass, and demand more considerable damages in that respect. Where is the written law that gives any magistrate such a power? I can safely answer, there is none; and, therefore, it is too much for us, without such authority, to pronounce a practice legal which would be subversive of all the comforts of society."

To grant the relief prayed for by the petitioner would be to permit an unreasonable search and seizure of papers in violation of the Fourth Amendment. It was not the intention of Congress to grant such unlimited examination and inspection by the legislation in question, nor, indeed, did Congress have authority to do so under the commerce clause of the Constitution. It would be unreasonable and unjust to accede to the demands of the petitioner, and the application for the peremptory writ of mandamus against the respondents American Tobacco Company and P. Lorillard Company is denied.