### CENTRAL CONSUMERS' CO. v. JAMES, U. S. Marshal.

(District Court, W. D. Kentucky, January 18, 1922.)

Intoxicating liquors ⊂⊐248—Affidavit held insufficient to authorize issuance of search warrant.

 The affidavit of a prohibition agent that he obtained from the premises of the manufacturer samples of a liquid purporting to be a cereal beverage, that such samples were analyzed and found to contain one-half of 1 per cent. or more of alcohol, without stating by whom the analysis was made or producing the testimony of such person, *held* not to set forth "facts," required by Act June 15, 1917, tit. 11, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼e), and by National Prohibition Act, tit. 2, § 25, to authorize the issuance of a search warrant and the seizure thereunder of a large amount and variety of property from the plant of the manufacturer.

Petition of the General Consumers' Company against E. H. James, United States Marshal, for restoration of property. Petition granted.

Alfred Selligman and Arthur B. Bensinger, both of Louisville, Ky., for claimant.

W. V. Gregory, U. S. Dist. Atty., of Louisville, Ky., for the marshal.

WALTER EVANS, District Judge. The plaintiff has asked for the restoration to it of the very large amount and variety of property which the defendant, acting in his official capacity, seized under a search warrant issued and placed in his hands by J. A. Craft, the United States commissioner here. The United States district attorney has moved to dismiss the claimant's petition, and thereby has been raised several important questions of law; no objection being made to the form of the proceeding.

On January 5, 1922, F. L. Hansbrough, federal prohibition agent (hereinafter called the agent), presented to the commissioner an application for a search warrant, and in its support presented two affidavits of his own and another of Henry Hunold. The first of the affidavits was contained in the verified application presented to the commissioner, wherein it was stated that on October 27, 1921, the claimant then operated and had since continued to operate an establishment, consisting of all the buildings, plant, machinery, and supplies described in the application. He further stated that—

"Based upon the statements contained in the affidavit of Henry Hunold, hereto attached and made a part hereof, deponent has reasonable cause to believe and verily believes, and therefore makes complaint on oath and says, that the herein referred to establishment has been and was, on or about the said 27th day of October, 1921, and is now being, operated in violation of Title II, sections 3 and 25, of the National Prohibition Act, and that there is contained therein intoxicating liquors and raw materials, and other property, including, among other things, cases, kegs, bottles, containers, vats, hops, malt, rice, syrup, sugar, mash, beer, coolers, and other materials being used and intended to be used in the manufacture and sale of intoxicating liquor fit for use for beverage purposes, containing one-half of 1 per centum or more of alcohol by volume, in violation of the said National Prohibition Act."

The affidavit of Henry Hunold is as follows:

"Affiant, Henry Hunold, first being duly sworn, states that he is a citizen and resident of Jefferson county, Kentucky, and that on or about October 10, 1921, he purchased from the Central Consumers' Company, of Louisville, Ky., one drum containing about two dozen bottles of beer, for which he paid the said Central Consumers' Company $23, and that said beer is fit for use for beverage purposes."

If nothing more had been shown to the commissioner, no ground for the search warrant could have been seen. This being obvious, the agent made another and separate affidavit before the commissioner, in which, after setting forth practically the same facts as those appearing in the application for the search warrant in respect to the character and number of items of the petitioner's very extensive plant and its large and numerous contents, he says:

"That on or about October 12, 1921, the deponent, in the discharge of his duties as such agent, entered the bottling house of the hereinbefore described establishment, and then and there obtained from the pasteurizing tank samples of liquid purporting to be cereal beverage; that on or about October 18, 1921, he obtained from a drum containing eight dozen bottles in the saloon of Henry Hunold, 524 West Walnut street, Louisville, Kentucky, samples of beer which had been purchased by the said Henry Hunold from the Central Consumers' Company, Inc., as appears more fully from the affidavit of Henry Hunold, hereto attached and made a part hereof; that on or about October 27, 1921, he obtained from drums not labeled in the bottling house of the Central Consumers' Company samples of liquid purporting to be cereal beverage; and that said samples obtained as aforesaid were tested and analyzed, and found to be intoxicating liquor fit for use for beverage purposes, and containing one-half of 1 per centum or more of alcohol by volume, and were then and there manufactured, sold, held, and possessed in violation of title II, sections 3 and 25, of the National Prohibition Act."

Section 5 of title II (41 Stat. 309) authorized an analysis of those samples. The most important phase of the owner's application for the restoration of all the property seized under the search warrant turns upon the sufficiency of the affidavits as a whole as a basis of the right to a search warrant. That question must be determined by the provisions of title II, sections 3 and 25, of the National Prohibition Act, which so far as now important, are as follows:

"Sec. 3. No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

"Sec. 25. It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order."

As will be seen, section 25 is made to embrace certain provisions of title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917. Those provisions, so far as applicable, are as follows:

"Sec. 2. A search warrant may be issued under this title upon either of the following grounds:

"1. When the property was stolen or embezzled in violation of a law of the United States; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was stolen or embezzled, or from any person in whose possession it may be.

"2. When the property was used as the means of committing a felony; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be.

"3. When the property, or any paper, is possessed, controlled, or used in violation of section twenty-two of this title; in which case it may be taken on the warrant from the person violating said section, or from any person in whose possession it may be, or from any house or other place in which it is concealed.

"Sec. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

40 Stats., 228, 230 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼b–10496¼e).

These statutory provisions show that search warrants are to be issued only where property was stolen or embezzled, or where property was used as a means of committing a felony, or when the property or paper is controlled or possessed in violation of section 22 of that statute (section 10212i), which section refers to unlawful dealings with foreign nations. It thus appears that the statute of 1917 very plainly requires—

(1) That a search warrant shall not be issued, except upon probable cause, supported by affidavit.

(2) That the commissioner, before issuing the search warrant, must examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing with their signatures thereto; and,

(3) The affidavits or depositions must set forth the facts tending to establish the grounds for the application, or probable cause for believing that they exist.

In endeavoring to meet these requirements, the agent in this instance in his application asserted that he believed and had cause to believe that the Central Consumers' Company was operating its plant in violation of sections 3 and 25 of title II of the National Prohibition Act. The first of these sections, as we have seen, makes it unlawful to manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor except as authorized by the act.

The second of them, namely, section 25, makes it unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violation of title II, or which has been so used, and provides that no property right shall exist in such property. "Intoxicating liquors" are such as contain one-half of 1 per cent. or more of alcohol, and the agent's application for a search warrant had in view that condition. He tells of the obtaining by himself in October of certain samples from the pasteurizing tank on the premises of the Central Consumers' Company, and also tells of his obtaining samples of some beer bought from that company by Henry Hunold, also in October, 1921, and says, further, that the beer Hunold bought was fit for use for beverage purposes. The affidavit of Hunold supports this latter statement.

While the offenses involved in the charges made by the agent are in no sense felonies, the Prohibition Act makes it necessary, when asking for a search warrant, to make as clear a showing of facts as if sections 3 and 25 created felonies, instead of acts punishable only as misdemeanors or as nuisances, to be abated by litigation, or as destructive of the title to property when it is used as forbidden in those sections. See sections 3, 4, 21, 22, 25, and 29 of title II of the act. In this situation, and coming back to the affidavits presented to the commissioner when the application for the search warrant was made, we must ascertain whether those affidavits state "facts," instead of inferences, and whether the statute (40 Stat. 228) was complied with, as is required by section 25 of the Prohibition Act.

While the agent states his belief that the law had been violated, and while Hunold tells of his purchase and that the beer he bought was fit for beverage purposes, neither of them shows how much or how little alcohol the samples contained, though the agent reaches the conclusion that it was more than one-half of 1 per cent. The agent's affidavit tells about all the samples, and says they were analyzed and found to contain one-half of 1 per cent. alcohol or more; but he does not say that he in person analyzed them, or either of them, or that he could, as an expert, intelligently have done so, or that they were analyzed in his presence, or that the person who analyzed them was in Louisville, or was in any manner known to the agent or to the commissioner, or that even the name of the analyzer was known to the agent. Certainly it is not shown that the latter could not have been examined before the commissioner or his affidavit obtained. If any of these matters could have been stated or shown in the agent's affi-

davits or application, it is fair to say that that would have been done when the search warrant was asked for. Nor did the commissioner inquire into them.

Under these circumstances, and in view of the importance of what was being done, the presumption seems clear that no such "facts" were available for a statement in the application or affidavits. Therefore the question arises whether the agent and the commissioner alike did not, in this instance, act upon mere inference or hearsay, and not upon a showing of "facts," as demanded by the statute, in the important exigency which was to be met in the manner required alike by the law and by the rights of the owner of the property thereunder. In short, was there an adequate showing of the "facts" to the commissioner, or was there only the hearsay information which the agent had obtained in some unmentioned way and accepted as true?

In considering this question we must keep in mind alike the provisions of the Eighteenth Amendment as a part of the supreme law of the land and those of the National Prohibition Act passed for its enforcement. These laws bear alike upon the United States and the individual citizen—a corporation being one of the latter. Silverthorne v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319. A prohibition agent is an officer whose good faith is always presumed, and while the commissioner is neither a judge nor a court, he is an officer of the latter (Todd v. United States, 158 U. S. 278, 282, 15 Sup. Ct. 889, 39 L. Ed. 982), and must be careful to conform strictly to all legal requirements. Both of these officers must be guided by the law, and must carefully conform to its requirements in respect to the issuance of search warrants, which authorize, not only an entrance upon a citizen's property, but a seizure of it for the purpose, among others, of making it evidence against the owner. Evidence obtained through a lawfully issued search warrant is admissible against the owner; but, if not so obtained and issued, the property seized under it must be returned to the owner.

In this instance the return of property to a very large amount is sought, and the application must be granted, unless the search warrant was obtained upon such showing of facts as is made necessary by the statutory provisions we have inserted. We have very carefully considered the authorities available in connection with the affidavits, and have reached the conclusion that the seizure of the property sought to be returned was not made pursuant to law, that the necessary "facts" were not presented to the commissioner, and consequently that his action was not supported by lawful authority. This conclusion seems clearly demanded by cases like Veeder v. United States, 252 Fed. 414, 418, 420, 164 C. C. A. 338; United States v. Ray & Schultz (D. C.) 275 Fed. 1004, 1006; Berry et al. v. United States (C. C. A.) 275 Fed. 680, 681; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; United States v. Kraus (D. C.) 270 Fed. 578; United States v. Kelih (D. C.) 272 Fed. 484; United States v. Mitchell, etc. (D. C.) 274 Fed. 128; Hughes v. Falvey and others, 50 App. D. C. 213, 269 Fed. 865; United States v. Friedberg (D. C.) 233 Fed. 313–318.

The district attorney relies upon the case of In re Rosenwasser Bros. (D. C.) 254 Fed. 173, as requiring a different conclusion. With this contention we cannot agree, in view of the authorities just cited and others that might well have been put on the list.

Much has been said about the large and, indeed, the excessive amount of property seized, and certainly the facts in that connection are striking; but while Hughes v. Falvey, 50 App. D. C. 213, 269 Fed 866, and Francis Drug Co. v. Potter (D. C.) 275 Fed. 615, are suggestive, we do not think it is necessary to give further consideration to this phase of the argument.

The samples taken by the agent from claimant's premises were not seized under the search warrant, and do not concern us in this proceeding; but the Central Consumers' Company is entitled to have returned to it all the property of every character seized or taken possession of, under the search warrant.

A decree accordingly will be prepared and entered.