## UNITED STATES v. KAPLAN
### and other defendants named at the foot of the opinion.

(District Court, S. D. Georgia. February 15, 1923.)

1. **Intoxicating liquors** ⊂⊃249—**Form of search warrant stated.**

Under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), which control under National Prohibition Act, tit. 2, § 25, every search warrant should be full and complete in itself, should contain the name or description of the person whose premises are to be searched and a particular description of the property to be sought and of the place to be searched, and should state the particular ground or probable cause for its issue, and the names of the persons whose affidavits (or depositions) have been taken in support thereof, should direct that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case the warrant may contain a direction that it be served at any time of the day or night, and should direct that it be executed and returned to the judge or commissioner who issued it within 10 days after its date.

2. **Searches and seizures** ⊂⊃3—**Officer must give copy of warrant to person from whom taken.**

An officer who takes property under a search warrant must give a copy of the warrant, together with a receipt for the property taken (specifying it in detail), to the person from whom it was taken by him or in whose possession it was found, or in the absence of any person he must leave a copy of the warrant and the receipt in the place where he found the property, under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a–10496¼v). These requirements are directory, and their absence is not fatal.

3. **Searches and seizures** ⊂⊃3—**Return of warrant to judge or commissioner.**

An officer taking property under a search warrant must forthwith return the warrant to the judge or commissioner and deliver to him an inventory of the property taken, made publicly or in the presence of the person from whom it was taken and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory, and taken before the judge or commissioner at the time, to the effect "I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant," under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v). These requirements are directory, and their absence is not fatal.

4. **Intoxicating liquors** ⊂⊃249—**Search warrant may recite owner unknown.**

Under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), which control under National Prohibition Act, tit. 2, § 25, as regards search warrants, if the name of the person from whom the property is to be taken is known, it should be so stated, but, if not possible, a description of him should be used; if, however, the property sought is not in the possession of any one so far as can be ascertained, this should not prevent search and seizure, and it is permissible to recite that the owner of the premises or property is unknown.

5. **Searches and seizures** ⊂⊃7—**Party not in possession cannot complain privacy invaded.**

If, at the time of search and seizure under a search warrant, the property be not in the possession of the party complaining, he will not be heard to object, his right of privacy not having been invaded, under Const. Amend. 4, and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v).

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Intoxicating liquors ⟐⟿248—Affidavit must state facts on which knowledge Is founded.**

It is insufficient for the issuance of a search warrant that an affiant or deponent shall swear, ever so positively, to the conclusion that liquor is stored in violation of law in a described building, without affirmatively stating the facts upon which such knowledge is founded, the determination of whether or not the facts proven satisfy of the existence of the grounds of the application or that there is probable cause to believe their existence being a judicial question, under Const. Amend. 4 and Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), which control under National Prohibition Act, tit. 2, § 25.

**7. Intoxicating liquors ⟐⟿248—Evidence of deponent on application for search warrant must be competent.**

Evidence used on application for search warrant to discover liquors under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, must be such as would be admissible on the trial of a case before a jury, and should not be such as "merely hearsay information."

**8. Searches and seizures ⟐⟿3—Commission or judge must state in search warrant particular grounds or probable cause for issue.**

A commissioner or judge, having become satisfied by proven facts of the existence of the grounds of the application for a search warrant, or that there is probable cause to believe their existence, must state therein the particular grounds or probable cause for its issuance; Espionage Act, tit. 11, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f), being mandatory in this respect.

**9. Intoxicating liquors ⟐⟿249—Search warrant must state names of deponents as well as affiants; "affidavits."**

Under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, the names of deponents, as well as of the affiants, must be inserted in a search warrant; the word "affidavits" embracing "depositions."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Affidavit.]

**10. Intoxicating liquors ⟐⟿248—Search at night without proper affidavit illegal.**

Under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, if a search for liquor is made in the nighttime, authorized by a search warrant not supported by an affidavit stating positively that the property was on the person or in the place to be searched, the search would be illegal.

**11. Intoxicating liquors ⟐⟿249—Seizure at night without direction in search warrant illegal.**

Under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, a search and seizure of liquor in the nighttime, where the warrant does not in terms contain a direction that it may be served at any time of the day or night, is illegal.

**12. Intoxicating liquors ⟐⟿249—Failure to leave receipt does not render seizure invalid.**

Failure of officer taking liquor under a search warrant to give a copy of the warrant, together with a receipt, to the person from whom the property is taken or in the place where the property is found, as required by Espionage Act, tit. 11, § 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼l), does not invalidate the warrant, or the search and seizure.

**13. Intoxicating liquors ⟐⟿249—Failure of officer to return search warrant, inventory, etc., does not invalidate seizure.**

Failure of officer seizing liquor under a search warrant to comply with Espionage Act, tit. 11, § 13 (Comp. St. 1918, Comp. St. Ann. Supp.

1919, § 10496¼m), providing that he forthwith return the warrant and deliver a written inventory, made public or in the presence of the person from whom possession was taken, etc., does not invalidate the search and seizure.

14. **Intoxicating liquors ☞256—Return of seized property not granted, where possession constitutes crime.**

Unless the petition for return of liquor unlawfully seized under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, affirmatively shows that the petitioner is legally permitted to have possession of the liquor, the effort is to recover the possession of physical property whose possession will be a crime, and the petition will be denied.

15. **Searches and seizures ☞7—Reasonable searches always permissible.**

An unreasonable search is the menace against which Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, protect, and reasonable searches are always permissible.

16. **Searches and seizures ☞3—Officer seizing property without warrant does so at risk.**

When search of automobiles and suit cases is made without warrant, it is essential that reasonable grounds therefor shall exist; but in such case, by reason of its being impracticable to procure a warrant, the conclusion as to the existence of such reasonableness must be determined by the officer and at his risk.

17. **Searches and seizures ☞2—Common-law rule that officer may enter building without warrant, where crime committed in presence, not changed by statute or Constitution.**

The rule at common law that, where a crime was committed in the presence of an officer, he could enter a building without warrant, in which such crime was being perpetrated, has not been affected by either constitutional or statutory provision.

18. **Searches and seizures ☞3—Knowledge justifying search without warrant may arise from senses.**

The knowledge that justifies belief as to the actual or probable existence of a crime, warranting an officer to enter a building without a warrant, may arise from any of the senses.

19. **Intoxicating liquors ☞249—Seizure of suit cases and automobiles without warrant or probable cause not justified.**

Under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, the fact of finding liquor by reason of the search of either suit cases or automobiles cannot be a justification for a search that was made without a lawful warrant, or without probable cause for believing that a crime was being committed in the presence of the officer.

20. **Arrest ☞71—Criminal law ☞395—Right to search arrested person for liquor stated; liquor seized may be used as evidence.**

In the event of a citizen being arrested for being drunk or disorderly, or for some other crime, if after his arrest he is seached and liquor is found on him, the search and seizure is lawful, and the liquor can be retained, and can be used against the accused under a charge of violating the National Prohibition Act, under Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v, and Const. Amend. 4.

21. **Constitutional law ☞83(1)—Intoxicating liquors ☞250—Officers should not fire at fleeing automobiles; "liberty."**

Officers searching for liquor under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, should not jeopardize lives by firing at automobiles in the hope of puncturing tires of a fleeing automo-

bile; "liberty" meaning more than nonconfinement in jails, and giving the right to enjoy one's life uninterruptedly and uninterfered with, so long as the rights of others be not invaded, and so long as the laws of the land are not violated in a way that will evidence probable cause of such violation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Liberty.]

22. **Intoxicating liquors** ⬤⇒250—**Improper to place plank across road with nails as regards searches and seizures.**

As regards searches and seizures of intoxicating liquor under Const. Amend. 4, Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25, it is an invasion of the right of a citizen to place across a road a plank with nails standing upright, so as to puncture the tires of an automobile, as to which there is no evidence showing probable cause that it is being used in violation of the law.

23. **Homicide** ⬤⇒105—**Right of officer to shoot at fleeing felons.**

An officer who kills some one when shooting at a fleeing automobile is faced with the necessity for showing that there was no other reasonably apparent method of effecting the arrest or preventing the escape of a fleeing felon, and that he has in other respects performed his duty.

24. **Homicide** ⬤⇒105—**Officer has no right to kill fleeing person guilty of misdemeanor.**

In the case of a misdemeanor, it is a general rule that an officer has no right, except in self-defense, to kill the offender to effect his arrest, and the killing of a fleeing person under such circumstances amounts to murder.

Prosecutions by the United States against S. Kaplan and against numerous others hereinafter specified. On petition by defendants for the return of liquor seized. Prayer denied.

The United States District Attorney.

Shelby Myrick, of Savannah, Ga., for defendants.

BARRETT, District Judge. The above cases embrace a number of questions in connection with search and seizure under the Prohibition Act, and, while the facts are not identical in any two cases, the same principle will control two or more, and the general principles applicable are nearly related. It seems best therefore to discuss the principles involved, and then to determine each case by the application of such principles.

### Form of Search Warrant.

[1-3] 1. Applying the provisions of the Fourth Amendment to the Constitution of the United States and those of the Espionage Act (40 Stat. 228, tit. 11 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v]), pertinent thereto, which control under the Prohibition Act (title 2, § 25, National Prohibition Act, 41 Stat. 305), every search warrant should accord with the following:

The warrant should be full and complete in itself. It should contain the name or description of the person whose premises are to be searched, a particular description of the property to be sought and of the place to be searched, should state the particular ground or probable cause for its issue, and the names of the persons whose affidavits (or depositions) have been taken in support thereof, that is, those who

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

prove the particular grounds or probable cause; should direct that it be served in the daytime, unless the affidavits (or depositions) are positive that the property is on the person or in the place to be searched, in which case the warrant may contain a direction that it be served at any time of the day or night; should direct that it be executed and returned to the judge or commissioner who issued it within 10 days after its date. The officer who takes the property under the warrant must give a copy of the warrant, together with a receipt for the property taken (specifying it in detail), to the person from whom it was taken by him or in whose possession it was found, or in the absence of any person he must leave a copy of the warrant and the receipt in the place where he found the property. The officer must forthwith return the warrant to the judge or commissioner and deliver to him an inventory of the property taken, made publicly or in the presence of the person from whom it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory and taken before the judge or commissioner at the time, to the following effect:

"I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant."

It is believed that all of the foregoing requirements are demanded by the Constitution or the statute, and that failure to observe any of them is bad practice. But such failure is not in every instance fatal, and statement will be made of what is essential and what is merely directory.

Any discussion here of the history of the Fourth Amendment, and of its imperative importance in the maintenance of our liberties, would be presumptuous and superfluous, in view of the opinions of the Supreme Court of the United States in the cases of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, and Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. Suffice it to say that those officers or laymen who believe that this great right—this essential of liberty—should be invaded and impaired rather than have a violator of any statute escape had best read and ponder what our Supreme Court has said.

The Fourth Amendment to the Constitution of the United States is as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provisions of the Espionage Act (40 Stat. 228; U. S. Compiled Stat. 1918, 1919 Supp. p. 2396), pertinent to searches and seizures, are:

"Sec. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

"Sec. 6. If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner.

"Sec. 7. A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

"Sec. 8. The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.

"Sec. 9. He may break open any outer or inner door or window of a house for the purpose of liberating a person who, having entered to aid him in the execution of the warrant, is detained therein, or when necessary for his own liberation.

"Sec. 10. The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night.

"Sec. 11. A search warrant must be executed and returned to the judge or commissioner who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void.

"Sec. 12. When the officer takes property under the warrant, he must give a copy of the warrant together with a receipt for the property taken (specifying it in detail) to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property.

"Sec. 13. The officer must forthwith return the warrant to the judge or commissioner and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if they are present, verified by the affidavit of the officer at the foot of the inventory and taken before the judge or commissioner at the time, to the following effect: 'I, R. S., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.' "

"The warrant should be full and complete in itself," both as to essentials and as to directions; the first because essential, and the second in order that the officer serving the paper shall not have the excuse of ignorance as to his duty, and that the accused may promptly know what is the accusation against him, upon what it is based and what the officer should do.

"Name or description of the person whose premises are to be searched, a particular description of the property to be sought and of the place to be searched." These requirements are so obvious as to be undisputed. The question arises only as to compliance.

[4, 5] If the name of the person be known, it should be so stated,

but, if not possible, a description of him should be given. If, however, the property sought is not in the possession of any one so far as can be ascertained, this should not prevent search and seizure, and it is permissible to recite that the owner of the premises or property is unknown. United States v. Borkowski (D. C.) 268 Fed. 408. If at the time of search and seizure the property be not in the possession of the party complaining, he will not be heard to object. His right of privacy will not have been invaded. Haywood et al. v. United States, 268 Fed. 795 (C. C. A. Seventh Cir.).

[6, 7] "Should state the particular grounds or probable cause for its issue and the names of the persons whose affidavits (or depositions) have been taken in support thereof; that is, those who prove the particular grounds or probable cause." There seems to be no question as to the explicitness of the requirement that before the issuance of a warrant there must be proof by affidavits or depositions of "the facts tending to establish the grounds of the application or probable cause for believing that they exist." Espionage Act, supra, § 6 (section 10496¼b). The determination of whether or not the facts proven satisfy of "the existence of the grounds of the application or that there is probable cause to believe their existence" (Espionage Act, supra, § 6) is judicial, and must be performed by the judge or commissioner. It cannot be performed by the applicant or any affiant or deponent. It is therefore insufficient for the issuance of a warrant that an affiant or deponent shall swear, ever so positively, to the conclusion that liquor is stored in violation of law in a described building, without affirmatively stating the facts upon which such knowledge is founded. In such case the affiant or deponent would be performing the judicial act, the commissioner or judge would be a mere automaton, and the manifest mandates of the law would be disregarded.

Furthermore, the evidence must be such "as would be admissible upon the trial of a case before a jury." Giles v. United States, 284 Fed. 208, 214 (C. C. A. First Cir.) As illustrative of this, such evidence, used as the basis of the warrant, has been animadverted on as "merely hearsay information." Central Consumers' Co. v. James (D. C.) 278 Fed. 249, 253. "The finding of the legal conclusion of or probable cause from the exhibited facts is a judicial function, and it cannot be delegated by the judge to the accuser." Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338 (C. C. A. Seventh Cir.), certiorari by defendant denied by United States Supreme Court 246 U. S. 675, 38 Sup. Ct. 428, 62 L. Ed. 933. See, also, United States v. Borkowski (D. C.) 268 Fed. 410; United States v. Kelih (D. C.) 272 Fed. 484; Central Consumers' Co. v. James (D. C.) 278 Fed. 249; Queck v. Hawker (D. C.) 282 Fed. 942; Giles v. United States, supra.

[8] The commissioner or judge having become satisfied by proven facts "of the existence of the grounds of the application or that there is probable cause to believe their existence," he must not only issue the warrant, but must state therein "the particular grounds or probable cause for its issue" (Espionage Act, supra, § 6). The mandate is clear. Why should there not be an exact compliance? Is not the protective purpose of Congress most definite—that the proof should be in writing

(Espionage Act, supra, § 4 [section 10496¼d]), that facts, and not opinions, should be relied on (Espionage Act, supra, § 5 [section 10496¼e]), that the judgment should be on the proven facts, and that a record of such judgment should be recorded in the warrant (Espionage Act, supra, § 6), of which a copy should be furnished the accused (Espionage Act, supra, § 12 [section 10496¼l])?

The recital in the warrant, that "Whereas there is probable cause to believe the existence of the grounds of said application." may be only irregular, and may, in connection with other portions of the warrant, be sufficient; but surely it is best to recite just what grounds have been proven to, exist, or probably do exist, and then there can be no doubt as to what was the judicial action.

[9] I cannot apprehend why there can be any persistent belief that the warrant need not state "the names of the persons whose affidavits have been taken in support thereof." The only possible question is: Does this require the names of deponents as well as of affiants to be inserted? Does the word "affidavits" embrace "depositions"? Without hesitancy I conclude that it does. If only the affidavit of the applicant were contemplated, the singular number would have been used. But other affidavits may have been introduced to prove the facts; therefore the plural. Again, the facts convincing the commissioner or judge may have been proven only by depositions. If the names of the deponents, as well as affiants, are not required to be set forth, there would not be incorporated in the judgment of the commissioner or judge (the warrant) the names of the witnesses, or possibly any of them (if no affidavits were used), upon whose testimony he relied. The difference between an affidavit and a deposition is purely formal. Both must be sworn to, and both subscribed. Both must be preserved as part of the record. Espionage Act, §§ 4 and 17. This requirement creates a substantial right for the accused. It is a declaration that he is entitled to know at once, by incorporation in the very instrument claimed to authorize the search and seizure, who have sworn against him. It gives him a right to have formal record of what witnesses were the support of the judge or commissioner.

"If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chances of punishment for perjury." Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338, supra.

I am not unmindful that compliance with this requirement may deter or impair the usefulness of witnesses. But I have no right to assume that Congress was unmindful of such results. And even if I were convinced that Congress was so unmindful, and that ineffectiveness in the enforcement of the law would result from this interpretation, I could not reject the mandate of language so clear. If Congress desires a change in. its policy, it is for Congress to so declare.

[10] The warrant shall "direct that it be served in the daytime, unless the affidavits [or depositions] are positive that the property is on the person or in the place to be searched, in which case the warrant

may contain a direction that it be served at any time of the day or night." If a search be made in the nighttime, authorized by a warrant not supported by an affidavit stating positively that the property was on the person or in the place to be searched, the search would be illegal. United States v. Borkowski (D. C.) 268 Fed. 410; United States v. Yuck Kee (D. C.) 231 Fed. 228. Section 10 of the Espionage Act (section 10496¼j) above explicitly covers this.

All of the acts required in the remainder of the suggested warrant are specifically stated by the said Espionage Act, §§ 11, 12, and 13. It is true that these sections do not require that the warrant shall set forth these acts, but the incorporation of them in the warrant involves but little additional trouble, furnishes specific and ready information to the officer, and acquaints the accused with the proper course that should be pursued, and also whether the warrant is still in life. The foregoing requirements in sections 10, 11, 12, and 13 of the Espionage Act are substantially the requirements of the common law. Yuck Kee Case, supra.

The necessity for compliance with sections 11, 12, and 13, above, is discussed in a well-considered case (Giles v. United States, 284 Fed. 208 [C. C. A. First Cir.]), where it is said:

"There is no provision in the warrant requiring it to be executed and returned within 10 days. While it may be argued that the requirement that the officer 'shall report and act concerning the same as required by law' is by implication a provision for a return, so as to relieve the warrant of one of the objections urged by Otis against the writs of assistance (see the Boyd case, 115 U. S. 616, 622, 626, 6 Sup. Ct. 524, 29 L. Ed. 746), *yet the great weight of authority is that the warrant should be specific and complete within itself* (italics mine). The officer serving it should not be left to ascertain and judge of the requirements of the law."

[11-13] I concur in the opinion that a search and seizure in the nighttime, where the warrant does not in terms contain a direction that it may be served at any time of the day or night, are illegal, and when there is no positive evidence that the property is on the person or in the place to be searched issuance of a warrant to search at night is illegal. I am of the opinion that a failure on the part of the officer to whom the warrant is delivered for execution to comply with the requirements of sections 12 and 13 would not invalidate the warrant. These acts are merely ministerial, and if the officer fails in them he may be liable in damages, but such failure does not invalidate the warrant, or the search and seizure. Rose v. United States, 274 Fed. 245 (8), 250, 251 (C. C. A. Sixth Circuit).

### Search of Residences.

2. Section 25 of the National Prohibition Act explicitly covers this:

" * * * No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house."

See, in this connection, United States v. Mitchell (D. C.) 274 Fed. 128, which I approve.

### Return of Liquor Unlawfully Seized.

3. Section 33 of title 2 of the Volstead Act (41 Stat. 315) is as follows:

"The possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within ten days after the date when the Eighteenth Amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

### Section 25 of title 2 is in part as follows:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. * * * If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order."

[14] Unless, therefore, the petition for the return of liquor, alleged to have been unlawfully seized, affirmatively shows that the petitioner is legally permitted to have possession of the liquor, the effort is to recover the possession of physical property whose possession will be a crime. There is no law requiring or justifying the return of property to any one whose possession of it will constitute a crime, or whose use of it can be only for committing a crime.

"Where liquors and stills being used by defendants in violation of the law were seized by officers acting under invalid search warrants, the property will not be returned to defendants, though the evidence obtained by the search cannot be used against them, because of the illegal methods by which it was procured." U. S. v. Rykowski (D. C.) 267 Fed. 866 (4).

I consider the above to be the correct statement of the law, and do not agree with the principle decided in the case of United States v. Ray & Schultz (D. C.) 275 Fed. 1004.

### Seizure of Suit Cases and Automobiles Without Warrant.

[15] 4. Unreasonable search is the menace against which the Fourth Amendment to the Constitution and the search warrant statutes protect. Reasonable searches are always permissible.

[16] When reliance is had upon a warrant for search the evil of unreasonableness is guarded against by requiring that facts, not opinions, shall be proven, in writing, and the testimony shall be such as is admissible in a court of justice, and there shall be a judicial finding that the grounds of application, or reasonable belief of their existence, have been proven, which finding shall be incorporated in the warrant.

When search is made without warrant, it is equally essential that reasonable grounds therefor shall exist; but in such case, by reason of its being impracticable to procure a warrant, the conclusion as to the existence of such reasonableness must be determined by the officer, *and at his risk.*

[17] "At common law it was always lawful to arrest a person without warrant, where a crime was being committed in the presence of an officer and to enter a building without warrant, in which such crime was being perpetrated." McBride v. United States (C. C. A. Fifth Cir.) 284 Fed. 416, 419; Vachina v. United States (C. C. A. Ninth Cir.) 283 Fed. 35. This right has not been taken away by either constitutional or statutory provisions, and is so well established that further citation is unnecessary.

[18] The knowledge that justifies belief as to the actual or probable existence of the crime may arise from any of the senses. McBride v. United States, supra, citing several Georgia cases; United States v. Borkowski (D. C.) 268 Fed. 408 (6); Lambert v. United States, 282 Fed. 413 (C. C. A. Ninth Cir.); Vachina v. United States, supra. In the McBride and Borkowski Cases, supra, the knowledge arose from the sense of smell; in the Lambert Case from certain information, coupled with the actions of the accused; and in the Vachina Case it is said:

"Where a bottle and demijohn containing intoxicating liquor unlawfully in defendant's possession were in plain sight when officers entered a kitchen in the rear of his soft drink barroom, the seizure thereof was legal, whether or not they had a valid search warrant."

To the same effect see O'Conner v. United States (D. C.) 281 Fed. 396.

[19] The fact of finding liquor by reason of the search of either suit cases or automobiles cannot be a justification for a search that was made without a lawful warrant, or without probable cause for believing that a crime was being committed in the presence of the officer. See Slusser v. United States (D. C.) 270 Fed. 818. I disapprove of the decision in the case of United States v. Bateman (D. C. S. D. Cal.) 278 Fed. 231, to the effect that:

"In view of the impossibility of procuring warrants for the search of automobiles suspected of transporting intoxicating liquors, the officers have a right, without warrant, to stop and search automobiles, and the finding of liquor therein justifies the search."

[20] United States v. Snyder (D. C.) 278 Fed. 650, second headnote, holds that a prohibition agent has authority, "to arrest without warrant a person found on the street with whisky on his person, and to search him and seize such whisky." If this means that an officer can stop any one, without probable cause for believing that he has liquor on his person, and search him, without a warrant, and because liquor is found on him the search is justified, I disapprove of such decision. If, however, it means only that, in the event of a citizen being arrested for, say, being drunk or disorderly, and, after his arrest, he is searched and liquor is found on him, then this is lawful, and the liquor can be retained, and can be used against the accused under a

charge of violating the National Prohibition Act. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

[21] The enforcement of a law by the impairment of rights may be too costly. The repeal of a wise and good law may be brought about by its harsh and reckless enforcement. Officers, above all others, should observe the law. They should not, as a result of undue enthusiasm or by narrowed vision, wrongfully trespass upon the rights of others. They should not lose a proper sense of relative values of rights and duties. They should not, for instance, jeopardize lives by firing at automobiles in the hope of puncturing tires, when a slight misaim may result in death, even though the automobile might be occupied by a violator of the law. Especially should this be forborne when inevitably, at times, mistakes will be made, and a car shot at will be occupied by those who are entirely innocent. It must not be forgotten that the innocent may be apprehensive of attack from others than officers of the law, and may, especially in the darkness and in unfrequented roadways, hesitate at a signal to stop, and may conscientiously believe that their only safety is in flight. A fleeing automobile may be defiance of law, but a badly aimed shot may be murder. Liberty means more than nonconfinement in jails; it means the right to enjoy one's life uninterruptedly and uninterfered with so long as the rights of others be not invaded, and so long as the laws of the land are not violated in a way that will evidence probable cause of such violation. The conscientious and tactful officer must know that these characteristics do not always exist, and that sometimes power produces harsh disregard of the rights of others, and recklessness in the exhibition of such power. Fundamental rights must not depend upon the varying characteristics of officers.

[22] Equally is it an invasion of a right, though the results be not so disastrous, to place across a road a plank with nails standing upright, so as to puncture the tires of an automobile, as to which there is no evidence showing probable cause that it is being used in violation of the law.

[23, 24] If death should ensue by reason of a misaimed shot, and a prosecution were instituted in the state courts for the committed crime, not only might conviction of murder be had, but the case could not even be removed to the federal court for trial unless, in addition to the fact that the act was done in the enforcement of a federal law, three other things were shown: (1) That the defendant had reasonable cause to believe and honestly did believe that the party injured or killed was violating the federal law in the presence of him who did the shooting; (2) that he who did the shooting honestly and with reason believed that in order to arrest the violator of the federal law it was necessary for the officer to fire his gun at the departing automobile which held the violator, and to take the chance of shooting its occupants; and (3) that the confinement which the prisoner is suffering and will be required to endure while his case proceeds to trial and disposition in the state courts will so seriously interfere with the enforcement of the laws of the United States, or with the operations of its govern-

ment, that his is a case of emergency or urgency which justifies and requires departure from the general rule, and a discharge of petitioner before his trial in the state court. Castle v. Lewis, 254 Fed. 917, 166 C. C. A. 279 (C. C. A. Eighth Cir.). And, then, wherever tried, the officer would still be faced with the necessity for showing, in the case of a fleeing felon, that there was no other reasonably apparent method of effecting the arrest or preventing the escape, and that he has in other respects performed his duty, and, in the case of a misdemeanor, the general rule that an officer has no right, except in self-defense, to kill the offender to effect his arrest, and that the "killing of a fleeing person under such circumstances would amount to murder." 2 R. C. L. pp. 471–473, §§ 29 and 30, and cases cited.

United States v. George Miller and Helen Hadley:

The search and seizure in this case were illegal. The suit cases and automobile should be returned. The liquor should not be returned, but shall not be used in evidence.

United States v. Willard Eason and Mrs. Lena Smith:

The search and seizure in this case were illegal. The automobile should be returned to the owner. The liquor should not be returned, but should not be used in evidence; it is so ordered.

United States v. A. D. McCall (No. 2004 and No. 2005),
United States v. Mrs. Ellen Jones (No. 212 and No. 213),
United States v. Nick Javo and Mrs. Mary Javo and Albert Owens,
United States v. Joseph Greenberg,
United States v. Mrs. Jennie Friedman,
United States v. Lewis Cohen and Helen Cohen,
United States v. Joe Koenigsberg, and
United States v. S. Kaplan:

The search and seizure in each of these cases were illegal. The liquor should not be returned, but should be excluded from use in evidence; and it is so ordered.

United States v. Fred Kramer:

It is held that the barn wherein the automobile was standing at the time certain papers were removed therefrom was within the curtilage, and the papers taken from the automobile shall be returned. It is held that the place where certain liquor was found was without the curtilage. Bryant v. State, 60 Ga. 358; Hutchins v. State, 3 Ga. App. 300, 59 S. E. 848; Wright v. State, 12 Ga. App. 514, 77 S. E. 657. Furthermore, under the principles above decided, there is no right to have the liquor returned. For both reasons it is ordered that the prayer for the return of the liquor be denied.