## IN THE MATTER OF THE PETITION OF JESÚS PÁLES DÍAZ For a Writ of Habeas Corpus.

San Juan, Law, No. 1622.

Opinion filed October 3, 1923.

*Mr. James Foster Henry* for petitioner.

*Mr. R. H. Todd, Jr.,* for respondent.

Soto, Acting Judge, delivered the following opinion:

This is a petition for a writ of habeas corpus. In his petition Jesus Pales Diaz substantially alleges that he is deprived of his liberty and imprisoned in the San Juan district jail under or by virtue of a conviction by the district court of San Juan, second district, for assault and battery with aggravating circumstances; that the petitioner is an official of the government of the United States charged with the duties of Federal prohibition agent, internal revenue service, in the territory of Porto Rico; that the acts giving rise to the commission of such offense, which are more fully set out in the said petition, were committed in the discharge of his official duties; that his confinement is in violation of the Constitution and laws of the United States; and that the said Insular district court of San Juan did not have jurisdiction to try the petitioner for the alleged offense with which he was charged.

From the evidence offered by the petitioner it does not appear that the record of the prosecution in the Insular court based upon the charges recited in the petition, was presented. The oral evidence introduced by petitioner does not place us on the same footing for determining the facts, as the taking upon ourselves of such a task would convert us into a court of appeals entailing a review of the proceedings of an Insular court. Nevertheless, the trend of jurisprudence would seem to indicate that the writ lies in such cases, and from the cases we have examined it appears that such summary proceedings so operate,

provided the writ is granted only in extreme cases and is a matter of judicial discretion.

"While the Federal courts have jurisdiction to issue habeas corpus in certain cases in which the detention is under authority of a state, in the absence of any special circumstances requiring immediate action by *them,* they exercise a discretion whether in any particular case they will grant the writ, and are governed by the special circumstances of the case. They will not ordinarily interfere by habeas corpus with the regular course of procedure under state authority, and in the absence of some emergency demanding prompt action, a party held in custody by a state will be left to stand his trial in the state court, and will be left to a review of the final judgment of the highest courts of the state by writ of error to the United States Supreme Court. A similar rule applies to cases pending in the Federal courts. That the petitioner is without means to prosecute a writ of error from the Supreme Court of the United States is not a circumstance to justify a departure from the rule." 29 C. J. 14, § 8.

The fact that an appeal has been taken to the supreme court of Porto Rico counsels caution in the exercise of our discretion to intervene indirectly with the proceedings had in the Insular court. It seems to us that the most appropriate procedure would have been to move for a transfer of the case to this court, providing the ground alleged therefor was that the case involved the acts of a Federal agent in the discharge of his official duties as such national agent.

On the other hand, even conceding that we could review and weigh the facts, this is not a special case that would justify the exercise of our discretion to relieve the petitioner of responsi-

bility for the act committed by him and of which he has been found guilty by an Insular court. *Generally* speaking, the question to be determined here is how far a Federal officer may go in the discharge of his official duties and the extent of the rights of a citizen to enjoy the personal liberty guaranteed him under and by the 4th Amendment of the Constitution of the United States.

The Federal Prohibition Act prescribes how a search shall be conducted and what requisites a search warrant shall contain, which, in the sense mentioned, is nothing more than an enforcement of that inviolable Constitutional right.

Under Const. Amendment 4 and Espionage Act, title XI. (Comp. Stat. §§ 10,496¼a–10,496¼v, Fed. Stat. Anno. Supp. 1918, pp. 128–131), which control under National Prohibition Act, title 2, § 25, every "search warrant should be full and complete in itself, should contain the name or description of the person whose premises are to be searched and a particular description of the property to be sought and of the place to be searched, and should state the particular ground or probable cause for its issue, and the names of the persons whose affidavits (or depositions) have been taken in support thereof, . . . should direct that it be served in the daytime, unless the affidavits (or dispositions) are positive that the property is on the person or in the place to be searched, in which case the warrant may contain a direction that it be served at any time of the day or night and should direct that it be executed and returned to the judge or commissioner who issued it within ten days after its date." United States v. Kaplan, 286 Fed. 963.

But the inability, by reason of the special circumstances

surrounding such means of transportation, to obtain a warrant for the searching of automobiles for contraband liquors, does not signify that a search cannot be made, but to warrant the making of such search it is imperative that there be well-founded reasons for believing that the offense has been committed or that there is probable cause justifying the presumption that the offense is being committed in the presence of the officer. Applying these principles to a case like the one at bar, if the petitioner considered he had a good reason for firing at the automobile he was trying to stop, he took upon himself the consequence of his own act in so doing.

When search of automobiles and suit cases is made without warrant, it is essential that reasonable grounds therefor shall exist; but in such case, by reason of its being impracticable to procure a warrant, the conclusion as to the existence of such reasonableness must be determined by the officer at his risk.

Under Const. Amend. 4, Espionage Act, title XI. (Comp. Stat. §§ 10,496$\frac{1}{4}$a–10,496$\frac{1}{4}$v, Fed. Stat. Anno. Supp. 1918, pp. 128–131), and National Prohibition Act, title 2, § 25, the fact of finding liquor by reason of the search of either suit cases or automobiles cannot be a justification for a search that was made without a lawful warrant, or without probable cause for believing that a crime was being committed in the presence of the officer. United States v. Kaplan, 286 Fed. 965.

The evidence has not satisfied us that the offense involved in the transportation of contraband liquor, was committed. Rather would it appear that the petitioner was acting upon mere suspicion. The fact that he received oral advices from his superior officers to the effect that contraband liquor was about to be moved from Manati to San Juan and that, as

claimed by the *petitioner,* he had instructions to stop all passing automobiles for the purpose of search, and whether in compliance with such instructions or of his own initiative he fired at such vehicles as refused to obey the command to halt, even though the shots were aimed at the tires or gasolene tank, such act was a mere capricious attempt to enforce the law by endangering the lives and violating the rights of innocent citizens. This indicates a poor idea of proper compliance with official duties, since the slightest misaim might cause the death of the occupants of the car, inasmuch as the automobile showed two bullet holes, one near the top of the gasolene tank and the other in the box at the rear of the car. The recent case of United States v. Kaplan, supra (February 15, 1923), establishes the theory that such an act is unlawful even when the car is occupied by transgressors of the law, and in this connection goes on to say: "Especially should this be forborne when inevitably, at times, mistakes will be made, and a car shot at will be occupied by those who are entirely innocent. It must not be forgotten that the innocent may be apprehensive of attack from others than officers of the law, and may, especially in the darkness and in unfrequented roadways, hesitate at a signal to stop, and may conscientiously believe that their only safety is in flight. A fleeing automobile may be defiance of law, but a badly aimed shot may be murder. Liberty means more than nonconfinement in jails; it means the right to enjoy one's life uninterruptedly and uninterfered with so long as the rights of others be not invaded, and so long as the laws of the land are not violated in a way that will evidence probable cause of such violation. The conscientious and tactful officer must known that these *characteristics* do not always exist, and that

sometimes power produces harsh disregard of the rights of others, and recklessness in the exhibition of such power. Fundamental rights must not depend upon the varying characteristics of officers."

It happens precisely in this case that the occupants of the car were innocent persons of recognized social standing taking a pleasure drive in their automobile along the public highway and absolutely innocent of any connection with the illegal liquor traffic. It does not excite surprise, therefore, that Mr. Miller, who occupied the car in company with Miss Wells, should have been apprehensive that the persons who sought to detain the car late at night without any badge or token of the official character in which they acted, were drunkards or footpads rather than officers of the United States government, such impression being accentuated by the manner in which the petitioner suddenly appeared in the middle of the road with his cap tipped over, a flashlight in one hand and a shining revolver in the other, thereby creating in the minds of the occupants of the car the impression under which they labored with the natural consequence that, actuated by the instinct of self-preservation, they fled from the supposed danger as fast as their car would take them.

We concur with the attorney general for the respondent in the following observations copied from his brief: "We sustain that the actions of the petitioner and of Dewane on the night of June 14th plainly show that they were out on an exploratory expedition, for the purpose of discovery, without a warrant, trying to locate at random and with no definite and precise instructions, a consignment of liquor, as to the actual existence of which no evidence has been presented; that no offense was

committed by Miller in the presence of petitioner Pales, warranting him in trying to stop, search, and arrest him and his car."

And in like manner we have arrived, in substance, at the following conclusions:

First. That the Insular courts have plenary jurisdiction of the case against petitioner, Jesus Pales Diaz, which is now pending final decision on appeal before the supreme court of Porto Rico.

Second. That the cases cited above justify this court in holding that this is not a case of urgency or emergency, in which a Federal court should use its discretion in wresting a case which is pending final determination before the Territorial Courts, and therefore should not take cognizance or jurisdiction over the same.

Third. That the petitioner was not acting and did not act within the scope of his authority as a Federal agent or officer on the night of June 14th, and therefore is amenable to the Insular courts for any violation of the laws of Porto Rico.

For the foregoing reasons the writ of habeas corpus is dismissed, and canceled the bond furnished by the petitioner, and he is remanded to the custody of the district jailer of San Juan.