**NEW JERSEY WHOLESALE DRUG CO. v. BROWN, Federal Prohibition Director.**

(District Court, D. New Jersey. June 24, 1922.)

1. **Intoxicating liquors** ⊗⟼106(1)—**Unless expressly authorized by Commissioner, Director is without power to revoke permit.**

Under National Prohibition Act, tit. 2, § 1, par. 7, and section 9, authorizing the Commissioner of Internal Revenue to make regulations thereunder, to perform any authorized act through an assistant or agent designated for the purpose, and on findings after hearing to revoke a permit, and regulation 85, made by the Commissioner June 7, 1920, providing that the Commissioner "or the Director, when expressly authorized to hear and determine, may, after such hearing," revoke a permit, in the absence of express authority the Director has no power to revoke a permit.

2. **Intoxicating liquors** ⊗⟼108(9)—**Revocation of permit before hearing not authorized.**

National Prohibition Act, tit 2, § 9, does not authorize the temporary revocation of a permit before hearing of charges against the permittee.

3. **Searches and seizures** ⊗⟼5—**Owner entitled to return of property seized under illegal search warrant.**

The owner of property or papers seized under an illegal search warrant is entitled to have the same returned on timely application therefor.

On petition of the New Jersey Wholesale Drug Company against C. H. Brown, Federal Prohibition Director, for return of property. Granted.

⊗⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes·

Kraemer & Siegler, of Newark, N. J. (Robert H. McCarter, of Newark, N. J., of counsel), for complainant.

Frederic M. P. Pearse, Asst. U. S. Atty., of Newark, N. J., for Federal Prohibition Director.

LYNCH, District Judge. [1] The first point urged in behalf of an injunction restraining the state Prohibition Director from proceeding to revoke the complainant's permit to deal in intoxicating liquors for certain purposes is that the proceedings have not been instituted as provided for in the Volstead Act (41 Stat. 305). Section 9 of title 2 provides that the Commissioner may institute revocation proceedings where *he has reason to believe that the permittee* is violating the law *or* is not in good faith conforming to the provisions of his permit. Paragraph 7, section 1, title 2, provides that any act authorized to be done by the Commissioner (of Internal Revenue) may be performed by any assistant or agent designated by him for that purpose.

The manner of designating the assistant or agent is not provided for. So far as appears, a simple oral designation by the Commissioner of an assistant or agent to do any act authorized to be done by him might in itself be sufficient. But the Commissioner of Internal Revenue has adopted for the enforcement of the Volstead law by subordinates the practice of using regulations. A great number of regulations have already been issued. Uniform practice throughout the country was evidently desired. In one (Pro. Min. 85, dated June 7, 1920) we find the following, at section 8:

"The Commissioner, or the Director when *expressly* authorized to hear and determine, may, after such hearing, revoke the permit in question."

It may be that the Commissioner under this regulation would have general power to institute and hear revocation proceedings, but it seems to me that, unless the *Director* is *expressly authorized, he* has no such authority. Section 19 of this Pro. Min. 85 reads that the Commissioner, or, *when authorized,* the Director, shall immediately issue an order citing such person to appear and show cause why the permit held by him should not be revoked. I have not had pointed out to me any general *express* authorization or in this case any special *express* authorization to the Director to take action. In stating this I have in mind the accepted meaning of the words "express" and "expressly." From this it would seem to me that the Deputy Director in the instant case had no authority to institute these proceedings.

But why should there be revocation proceedings at all? The complainant's permit expired in December, 1921. It applied for a renewal for 1922. Pro. Min. 235, dated December 15, 1921, continued in force basic permits after date of expiration *pending official action on renewal applications.* The complainant continued to do business, under this provision of Pro. Min. 235, until the revocation proceedings were instituted. These revocation proceedings were begun because the Prohibition Department discovered what it regarded as sufficient to justify the cancellation of a permit. Why is this same discovery (after a six months' investigation) not sufficient to justify a

decision by the Commissioner *refusing to renew* the permit for 1922? If the Prohibition Department has completed its investigation, and now has in its possession facts which in its judgment warrant the cancellation of a permit, why does not it decide whether the applicant for a renewal is entitled thereto? Would not such procedure be simpler than attempting to revoke a permit of questionable existence?

[2] As to the second point—the right of the Director to temporarily revoke, before hearing, the permit under which the complainant is now conducting business: Title 2, section 9, provides for the institution and hearing of the matter of the revocation of permits, and then provides that, in the event that a person *has been found guilty* of willfully violating any laws or *has not in good faith* conformed to the provisions of the act, the permit shall be revoked, and that the permittee may then have a review of this decision before a court of equity. Then we find the following language:

"During the pendency of such action such permit shall be temporarily revoked."

This, in my opinion, means that after a permit has been revoked, which, of course, is after a hearing, and the permittee appeals to the court of review, automatically the permit under which he had theretofore done business shall be temporarily revoked. A permit is a property right in the holder to do business. It would be unjust and unfair to suspend it without hearing, so a hearing was provided for. The authority to arbitrarily prevent the holder of a permit from doing business does not appear to reside in any official. The hearing must first be accorded. This I think is the plain meaning of section 9.

### As to the Search Warrant.

[3] A search warrant was issued authorizing federal Prohibition Agents to enter the premises at No. 56 Arlington street, Newark, N. J., and there diligently to search into the alleged unlawful possession of intoxicating liquors and a paper containing evidence of the same and to seize and secure the same. In pursuance of this search warrant, a certain memoranda consisting of seven or eight sheets of paper was taken by the agents. Promptly after this seizure a motion, by way of petition, was made by the company whose place of business was searched for the return of this paper because of the insufficiency of the search warrant and the affidavit upon which it was issued. At the argument it was conceded that the affidavit upon which the search warrant was issued was insufficient and that the search warrant ought to be quashed. Does it not follow that the property taken by virtue of the search warrant should be restored? The government, through its representatives, says, "No."

The government, admitting that the seizure was unlawful, insists that the court should not make an order restoring the property, but should impound the paper unlawfully seized and also continue the government agents in control of the liquor which was technically seized and taken control of at the same time this memoranda was tak-

en. In other words, the position of the government, as I understand it, is: What was done was done unlawfully, but nevertheless the company is not entitled to have its property restored. And the case of Haywood v. United States (C. C. A.) 268 Fed. 795, is cited as authority for this proposition. A reading of that case discloses an entirely different situation. There papers seized in a raid in September were used before a grand jury without objection or hindrance and in February, five months afterwards, there was a petition to the court for a return of the property. This petition was denied and the papers were impounded. At page 801, lines 35 to 43, both inclusive, Circuit Judge Baker said:

"If the proper parties had made prompt application, it may be assumed that they would have obtained orders quashing the writs and restoring the property. Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338. If, following restoration, Haywood and others were adjudged to be in contempt for refusing to obey subpœnas and orders of court to produce the files and documents before the grand jury, it may be assumed that such judgments would be reversed. Silverthorne Lumber Co. v. United States, 251 U. S. 385."

The court then said:

"From defendants' verified motions to return the property and to quash the indictment, from the government's verified motion to impound, and from the property then in court, there was a sufficient basis of facts to justify the trial judge in finding that there was proper cause to believe that the property, particularly identified, had been used in the commission of the felonies described in counts 3 and 4."

It seems to me that the situations are clearly dissimilar. In the Haywood Case the application to quash was not prompt, and the search warrant was not quashed. In the instant case the application was prompt, and it is conceded that the warrant should be quashed.

It is also urged that this memoranda should not be returned because the facts indicate that it was found in the desk of the shipping clerk of the complainant, which desk was being examined by the prohibition agents because of permission granted by Pascal, the office manager of the complainant. Assuming that the agents looking through the desk with the consent of the company's manager ran across this paper, they did not take possession of it or seize it by virtue thereof. They went out and obtained a search warrant, and the possession was by virtue of the search warrant only. If no search warrant had been obtained, it might be relevant on an application to restore to present affidavits showing that the paper was voluntarily turned over to the agent. It is also my conclusion that the proper party is making this application.

Orders in accordance herewith will be signed.