PAUL O'HIGGINS v. A. O. ANDREU, individually and as Sheriff of Bradford County, Florida; E. K. PERRYMAN individually and as County Judge of Bradford County, Florida; MELVIN McKINNEY individually and as Deputy Sheriff of Bradford County Florida; and Frank Landrum individually and as Prosecuting Officer of and for the Court of the County Judge of Bradford County, Florida.

7 So. (2nd) 469            En Banc
April 7, 1942

Adkins & Arnow, for appellant.

J. Tom Watson, Attorney General, Lawrence A. Truett, Assistant Attorney General, Tiffany Turnbull, Special Assistant Attorney General, for appellees.

BUFORD, J.:

The appellant was a liquor dealer in Putnam County where intoxicating liquor could be lawfully sold. His place of business was known as Midway Bar. His brother Dennis O'Higgins was employed as manager to operate the business. On June 5, 1941, Lindsey Griffis who operated a place of business in Bradford County, which was a dry county, went to Midway Bar in Putnam County, which was a wet county, for the purpose of buying one-fourth case of Calvert's Gin and one-half case of Carioca Rum. Midway Bar did not have that liquor in stock but Griffis paid for the liquor and Dennis O'Higgins, the manager, of Midway Bar, promised to get the liquor for Griffis on his first trip to Jacksonville and Griffis was to go back to Midway Bar later and get the liquor. On the next day, June 6th, 1941, Dennis O'Higgins went to Jacksonville in Duval County, where intoxicating liquor may be lawfully sold, and there purchased a lot of liquor and included in his purchases the $\frac{1}{4}$ case of Calvert's Gin and $\frac{1}{2}$ case of Carioca Rum to fill the order of Griffis. Returning from Jacksonville to Midway Bar he had occasion to pass the place of business operated by Griffis in Bradford County. There Griffis stopped O'Higgins and requested him to deliver the liquor, which he had purchased, at his place of business there and save him, Griffis, from having to make the trip over into the

adjoining county to Midway Bar. O'Higgins granted the request and delivered the gin and rum from the truck to an employee of Griffis at the back door of Griffis' place of business. But before the employee had time to get inside of Griffis' place of business a deputy sheriff appeared on the scene and arrested one or more of the parties involved, but the arrest is not material here. The deputy sheriff also seized not only the liquor which O'Higgins was delivering to Griffis but also seized the remainder of the liquor which remained on the truck for the purpose of confiscating the same.

On September 11, 1941, Paul O'Higgins, the owner of the liquor, filed his bill of complaint in the Circuit Court of the Eighth Judicial Circuit in which Bradford County is located, against A. O. Andreu individually and as County Judge of Bradford County, E. K. Perryman, individually and as County Judge of Bradford County, and Melvin McKinney individually and as deputy sheriff of Bradford County, Florida, and Frank Landrum individually and as Prosecuting Officer of the Court of the County Judge of Bradford County, Florida.

This case comes here under stipulation in lieu of the record as provided by our Rule 11 approved January 13, 1941, and effective as of March 1, 1941. The stipulation shows that the bill of complaint alleges,

"that plaintiff, a resident of Duval County, Florida, is the sole owner of Midway Bar, which is located in Putnam County, Florida; that plaintiff has complied with all the Federal and State laws relating to the licensing of places of business for the retail sale of intoxicating liquors and beverages and the proper licenses have been duly issued to said Midway Bar;

that all the defendants are residents of Bradford County, Florida; that on June 6, 1941, plaintiff purchased a large quantity of intoxicating liquor from distributing companies in Jacksonville, Duval County, that on said day said intoxicating liquor was delivered by said distributing companies to Dennis O'Higgins, manager of said Midway Bar, and said intoxicating liquor was placed in a motor vehicle owned by plaintiff and operated by said Dennis O'Higgins, to which there was attached a plate duly issued by the Beverage Department of the State of Florida containing the words 'Beverage Vehicle No. 754.'

It was further alleged that one-fourth case of Calvert's Gin and one-half case of Carioca Rum are excepted from this suit and the term 'intoxicating liquor' as used therein refers to all the intoxicating liquor in said motor vehicle; that said intoxicating liquors were delivered to Dennis O'Higgins in Duval County, a 'wet' county, and were to be transported by said Dennis O'Higgins in said motor vehicle to Putnam County, Florida, also a 'wet' county; that while transporting said intoxicating liquor from Duval County to Putnam County, said Dennis O'Higgins entered Bradford County, Florida, which is a 'dry' county; that while within the boundaries of Bradford County Dennis O'Higgins stopped said motor vehicle; that while said vehicle was so stopped Melvin McKenney, a deputy sheriff, observed said intoxicating liquors and seized same; that at the time of said seizure no search warrant, warrant of arrest or writ of attachment had been issued authorizing a seizure of said intoxicating liquors; that all of said intoxicating liquor was properly stamped by the proper authorities of the State of Florida and United States and the

proper taxes had been paid thereon; that thereafter, on or about June 16, 1941, plaintiff by his attorneys duly demanded defendants to return said intoxicating liquors; that since said time defendant O. A. Andreu has retained possession of said intoxicating liquors and although often requested so to do has at all times refused to deliver said intoxicating liquor to plaintiff; that if said intoxicating liquor is returned to plaintiff same will be offered for sale at the aforesaid Midway Bar; that the approximate value of said intoxicating liquor is more than One Thousand ($1000.00) Dollars.

It is further alleged that in fact said intoxicating liquors were not sold or possessed in a county which had voted against the sale of intoxicating liquor; that if Sections 10 and 11, Chapter 18016, Laws of Florida, Acts of 1937, are construed so as to authorize the seizure and forfeiture of intoxicating liquors which one has in his possession with the intent to sell in a county which has authorized the sale of said intoxicating liquors, said Sections are unconstitutional. Thereupon plaintiff prayed that the defendants be ordered and directed to return said intoxicating liquors to plaintiff; that defendants and their subordinates be enjoined from taking said intoxicating liquor before any petit jury or court or from testifying of how or where, or by what means or from whom, or at what time and place said intoxicating liquors were obtained; that the use of said intoxicating liquors as evidence in any criminal case be suppressed.

On the 11th day of September, 1941, defendants filed their joint and several answers to the bill of complaint wherein it was alleged that at the time said intoxicating liquor was seized Dennis O'Higgins, an agent of plaintiff, had said intoxicating liquors in a

truck with the doors open in a county which had theretofore voted against the sale of intoxicatng liquor, and was then and there delivering from said truck intoxicating liquor ·to one Lindsey Griffis; that said Lindsey Griffis was commonly known to be a dealer in intoxicating liquors in said Bradford County, in violation of law, all of which was then and there well known to plaintiff, to Dennis O'Higgins, and to .his agents, servants and employees.

It is further alleged that at said time and place Melvin McKinney had a warrant for the arrest of Lindsey Griffis, charging him with the sale of intoxicating liquors in Bradford County, Florida; that as said Melvin McKenney started to arrest Lindsey Griffis he saw Dennis O'Higgins and Jerry O'Neal delivering intoxicating liquors from an open truck containing intoxicating liquor, which said truck then and there at or near the place of business of said Lindsey Griffis, and which said truck and the contents thereof, was then and there in the plain and open view of the said Melvin McKinney.

It was admitted that Melvin McKinney seized said intoxicating liquors and alleged that same was being held for the purposé of being confiscated and destroyed pursuant to and in accordance with the laws of the State of Florida; that said Dennis O'Higgins and Jerry O'Neal were each charged with the violation of a criminal statute; that Melvin McKinney arrested said Dennis O'Higgins and Jerry O'Neal for a violation of law committed in the presence of said officer and at the same time said Melvin McKinney seized and took into his possession the intoxicating liquor mentioned in the bill of complaint and which was in said truck in open view as aforesaid; that im-

mediately after said arrest, warrants were issued out of the County Judge's Court of Bradford County, Florida, charging said Dennis O'Higgins and Jerry O'Neal with an offense against the laws of the State of Florida. It was also admitted that all of said intoxicating liquors were properly stamped and that the State and Federal revenue had been paid thereon."

The stipulation then shows that,

"Paul O'Higgins, plaintiff, testified at a hearing held on the 11th day of September, 1941, that he is the owner of Midway Bar which is located in Putnam County; that on June 6, 1941, he had authorized a purchase of intoxicating liquor from certain distributing companies in Jacksonville and that neither Jerry O'Neal nor Dennis O'Higgins were authorized to sell any of the liquor before they returned to the bar. That Dennis O'Higgins was the manager of the Midway Bar, and had general authority to do all things necessary to conduct said business, which included the right to purchase, sell and deliver intoxicating liquors, and had been given no specific instructions not to deliver liquor in 'dry' territory, nor had he been expressly authorized and directed to do so; that liquor ordered from the bar would, when received, be delivered to customers either at the bar or in adjacent territory; as for example officer at or near Camp Blanding, or it might be ordered from bar for immediate delivery and on occasion would be delivered to purchaser at a place other than the bar; this was not the general policy of the bar, but upon occasion it had been done, and this, Dennis O'Higgins had the authority to do; that witness was in Jacksonville at the place of business of King Distributing Company, a liquor distributing company for whom witness

worked as a traveling salesman when Dennis O'Higgins obtained possession of the intoxicating liquors in question, and knew it had been purchased for the Midway Bar, and at that time did not give any instruction as to where it was to be taken and did not expressly authorize the delivery of liquor to Lindsey Griffis at Starke, or expressly prohibit it nor direct the route over which the liquors were to be transported to the Midway Bar, but supposed it would be transported by the nearest and most practical route. That there were three routes which could be traveled from Jacksonville to the Midway Bar, to-wit, Jacksonville via Green Cove Springs to the State Road 28 near Palatka and thence to Putnam Hall; the new road by Middleburg to Camp Blanding and Keystone Heights and thence to Midway Bar; through Baldwin, Starke, Keystone Heights to Midway Bar located near Putnam Hall and between Putnam Hall and Keystone Heights; that he did not personally know the various distances, but there was only a few miles difference in the routes, and he did not know what route Dennis O'Higgins generally used. Paul O'Higgins further testified that if said intoxicating liquor was returned to him same would be offered for sale at the Midway Bar. That the Midway Bar was still a going concern and had done several thousand dolars' worth of business, between the date of seizure and date of hearing.

"Dennis O'Higgins testified that he is the manager of Midway Bar and as manager had the right to do anything necessary to conduct said business including the right to purchase, sell and deliver liquor. That deliveries of liquor had been made at places other than the bar, but denied any had been previously delivered in 'dry' territory. That Jerry O'Neal was a negro boy

who was employed to sweep out and as general helper and roustabout around the bar. That on June 6, 1941, he obtained a large quantity of liquor from certain distributing companies in Jacksonville which had been purchased by Paul O'Higgins for the Midway Bar; that on June 5, 1941, Lindsey Griffis had come to the Midway Bar and paid for one-fourth case of Calvert's Gin and one-half case of Carioca Rum; that at that time he, the said O'Higgins, did not have in stock the brands of liquor desired by the customer, but his stock of that brand of liquor was composed of stock in bottles of larger capacity than ordered by the customer, the customer Lindsey Griffis specified half pints, and this he, O'Higgins, did not have in stock in the quantity ordered. Upon being informed of this fact by O'Higgins, Lindsey Griffis stated that he would return to the Midway Bar later and pick up his purchase. Dennis O'Higgins then stated that on June 6, 1941, as he was traveling from Jacksonville, Florida, to Midway Bar, with the aforesaid liquor in his truck, he passed by the place of business run by Lindsey Griffis in Starke, Bradford County, Florida; that at said time Lindsey Griffis stopped the truck and asked Dennis to save the expense of a trip to Midway Bar in Putnam County, and to deliver his order of intoxicating liquor to him at Starke at that time; that Dennis thereupon drove his truck to Lindsey Griffis' back door, where the truck door was opened, and he handed the liquors to Jerry O'Neal to be delivered to Lindsey Griffis, in his place of business at Starke. That the liquor delivered to Griffis, and which he testified had been purchased, was not segregated in the truck and had no special marks of identification. That the packages delivered at the back door of

Griffis' place were not sealed packages, but some of them were open and, as the negro boy reached the back door he was stopped and arrested by Melvin McKinney; that the negro boy was then and there informed that the Sheriff was confiscating all of said intoxicating liquor, including that on the truck."

The stipulation then proceeds with a detailed statement of the testimony given on direct and cross examination.

At the conclusion of the hearing decree was entered as follows:

"This cause coming on for final hearing upon the bill of complaint, the answer, and the testimony offered by the respective parties hereto, and both plaintiff and the defendants having announced that they had no further testimony to offer; the Court after having heard argument of counsel for the plaintiff and the defendants finds that the equities are against the plaintiff.

"It is therefore considered by the Court, Ordered, Adjudged and Decreed, that the prayer of the plaintiff for a mandatory injunction against the defendants be, and the same is hereby denied, and the bill of complaint is hereby dismissed at the cost of the plaintiff.

"Done and ordered in Chambers at Gainesville, Alachua County, Florida, this the 12th day of September A. D. 1941.

                    "(Signed) H. L. Sebring,
                        "Judge of said Court."

From this decree appeal was taken.

The appellant states four questions for our consideration, as follows:

First Question:

"Where the evidence shows that one Lindsey Griffis went to the Midway Bar in Putnam County, Florida, (a 'wet' county) on June 5, 1941, and paid for one-fourth case of Calvert's Gin and one-half case of Carioca Rum; that Dennis O'Higgins, Manager of said Bar, informed Lindsey Griffis that he did not have said intoxicating liquor in stock at the time and asked said Lindsey Griffis to call at the Midway Bar at some later date and get said intoxicating liquor; that on June 6, 1941, said Dennis O'Higgins went to Jacksonville, Duval County, Florida (a 'wet' county) and purchased said intoxicating liquor as well as more than one thousand dollars worth of other intoxicating liquor; that as said Dennis O'Higgins was proceeding from Jacksonville, Florida, to Midway Bar by a direct route, he passed by the place of business operated by said Lindsey Griffis in Bradford County, Florida (an alleged 'dry' county); that thereupon said Lindsey Griffis stopped Dennis O'Higgins and asked him then and there to deliver said one-fourth case of Calvert's Gin and one-half case of Carioca Rum; that after Jerry O'Neal (an employee of Dennis O'Higgins) took said one-fourth case of Calvert's Gin and one-half case of Carioca Rum off the truck and before he entered the place of business operated by Lindsey Griffis, one Melvin McKinney, a deputy sheriff in and for Bradford County, Florida, arrested said Jerry O'Neal and Dennis O'Higgins and seized all of the intoxicating liquor in said truck; and

"Where the evidence shows that said Dennis O'Higgins was transporting all of said intoxicating liquor from Jacksonville, Florida, to Midway Bar in Putnam County, Florida, should said intoxicating

liquor be returned to Paul O'Higgins, the owner of Midway Bar, upon his bill of complaint seeking a mandatory injunction and excepting therefrom said one-fourth case of Calvert's Gin and one-half case of Carioca Rum?"

Second Question:

"Under the provisions of Sec. 10, Chapter 18016, Laws of Florida, Acts of 1937, upon the arrest of a person charged with a violation of said Act, is the sheriff authorized to seize all of the intoxicating liquor in the possession, custody and control of the person arrested, or is such seizure limited to such intoxicating liquor as is held or possessed by said person in violation of the provisions of said Act?"

Third Question:

"Where intoxicating liquor is ordered and paid for in a County which has authorized the sale thereof, under the provisions of Sec. 11(c), Chapter 16774, Laws of Florida, Acts of 1935, may a delivery of such intoxicating liquor be made by the vendor in a county which has voted against the sale of intoxicating liquor?"

Fourth Question:

"Where it appears that on June 22, 1905, an election was held in Bradford County, Florida, wherein it was determined that thereafter the sale of intoxicating liquors shall be prohibited in said County; and where it appears that no election has thereafter been called or held in said county seeking to prohibit the sale of intoxicating liquors therein; does such election comply with the provisions of Article XIX, Constitution of Florida, as amended, so as to prohibit the sale of intoxicating liquor in said County?"

Under the showing made it is clear that the possession and transportation of all the liquor in the truck was lawful up to the time that Dennis O'Higgins opened the door of the truck and took therefrom the one-fourth case of Gin and the one-half case of Rum to deliver to Griffis. The evidence is clear and convincing that that was the only liquor that Dennis O'Higgins had any intent to take from the truck and that the remainder of the liquor in the truck was in the course of lawful transportation from Duval County, where intoxicating liquors could be and were lawfully sold, to a place in Putnam County where intoxicating liquors could be and were lawfully sold.

The respondents rely on the provisions of Sec. 10 of Chapter 18016, Acts of 1937, to support the decree in this case. That section reads:

"Section 10. That upon the arrest of any person charged with the violation of any of the provisions of this Act, it shall be the duty of the arresting officer to take into his custody all intoxicating liquors, wines or beer found in the possession, custody or control of the person arrested, and to safely keep and preserve the same and have it forthcoming at any investigation, prosecution or other proceeding for the violation of any of the provisions of this Act, and for the destruction of the same as is in this section provided. Upon the conviction of the person arrested for the violation, of any provisions of this Act, it shall be the duty of the Judge of the Court trying the case, after such notice to the person convicted, and any other person whom the Judge may be of the opinion is entitled to such notice, as the Judge may deem reasonable, to issue to the sheriff of the county a written

order adjudging and declaring such intoxicating liquors, wines or beer forfeited, and directing such sheriff to destroy such liquors, wines or beer. Such destruction shall be in the presence of the Clerk of the Circuit Court of said county and at such times, places and in such manner as such Judge shall, in his order, direct."

The provisions of this section can not be extended to intoxicating liquor lawfully in the possession of a party who may be arrested charged with a violation of Chapter 18016, supra. The delivery by the vendor of the one-fourth case of gin and one-half case of rum to the vendee in a dry county violated the provisions of the statute and that intoxicating liquor so being delivered was subject to proceedings for forfeiture under the statute. It may also be said that if there was sufficient evidence to warrant the conclusion that the remainder of the liquor in the truck was there for the purpose of being offered for sale in the dry county, or to be delivered in the dry county, that would likewise be subject to proceedings to confiscate. But the record in this case shows conclusively that the remainder of the liquor in the truck was not there for that purpose but was there to be lawfully transported to a place of business in a wet county and from a lawfully operated place of business in another wet county. We think that Sec. 11 of Chapter 18016, supra, supports this view. That section provides:

"Section 11. That the right of property in and to. intoxicating liquors, wines or beer sold or possessed by any person, association of persons, or corporation in violation of any of the provisions of this Act is hereby declared not to exist in any person, association of persons, or corporation and the same shall be forfeited."

This section only eliminates the right of property in and to such intoxicating liquors as are sold or possessed by any person in violation of the provisions of the Act. Without that limitation the Act would probably be unconstitutional and void. In the case of In Re: Seven Barrels of Wine, 79 Fla. 1, 83 Sou. 627, it was held:

"In view of the agreed statement of facts indicating that the wine in this case was lawfully acquired and possessed before the adoption and enactment of laws making such possession unlawful, and indicating also that such continued possession is reasonable under the circumstances and for stated purposes that are not unlawful, the claimants not having had a reasonable opportunity to release such possession, and the agreed facts do not show a purpose to violate any law, or any liability of the wine to become a nuisance or to jeopardize the rights of others or the public welfare, and in view of such organic guaranties of property rights, both Federal and State, as are not affected by the amendment to Article XIX of the State Constitution, and in view of the assumption that the Legislature intended an enactment that would not be of doubtful validity, it seems clear that the provisions of Chapter 7736, which statute was enacted to make the organic amendment to Article XIX effective, do not apply to the wine that was acquired and is held in possession as shown by the agreed statement of facts in this case, such wine not being a nuisance or otherwise a public menace or connected with any unlawful purpose. A nuisance may be abated, but unoffensive private property may not be arbitrarily destroyed. See Kansas v. Ziebold, 123 U. S. 623, text 669, 8 Sup. Ct. Rep. 273."

In the case of Geraghty v. Potter, 5 Fed. (2) 366, a petition was brought by Geraghty, at one time the owner and proprietor of a near-beer saloon in Holyoke, Mass., to recover possession of a quantity of liquor taken from his saloon by Federal Prohibition Agents who acted under a search warrant which was subsequently declared illegal. Geraghty was indicted for the illegal possession of the liquor but before trial the search warrant was quashed and the indictment was nol prossed. Thereafter proceedings were instituted as stated above. The Government contended that the petition should not be granted. The Court said:

"The government's line of argument, as I understand it, is that title 2, No. 3, of the Prohibition Act (Comp. St. Ann. Supp. 1923, Sec. 10138½aa), makes it unlawful to possess intoxicating liquors, except as authorized by the Act, and that there is nothing in the Act that authorized the proprietor of a near-beer saloon to possess such liquors; that title 2, No. 25 (Section 10138½m) of the Act again provides that it shall be unlawful to possess such liquor intended for use in violating the Act, and that no property rights shall exist in such liquor; that title 2, No. 33 (Section 10138½t), provides that after February 1, 1920, the possession of liquor by any person not legally permitted under the Act shall be prima facie evidence that such liquor is kept for the purpose of being sold or otherwise disposed of in violation of the provisions of the Act and that the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used; that this is a proceeding concerning such liquor; and that unless petitioner can allege and show affirmatively that he lawfully acquired, possessed, and

used the liquor he is not entitled to maintain this petition. This line of argument is not altogether novel. It has been repudiated in this district, not only in Godat v. McCarthy, supra, but in United States v. Intoxicating Liquors, supra, (Massachusetts case), and in United States v. Vigneaux, supra. In other jurisdictions it has failed to win approval. See New Jersey Wholesale Drug Co. v. Brown (D. C.) 289 F. 108; United States v. Kelih (D. C.) 272 F. 484.

"On the other hand the government has cited a number of cases from other jurisdictions where a return of the liquor has been denied and, after a careful consideration of these cases, I find only two that can be regarded as supporting the contention of the government."

The conclusion reached was:

"If, by virtue of this provision, the burden of proof rests upon the petitioner to show that he is lawfully in possession, the situation will be that the government has on hand a quantity of liquor over which it has no power of disposal. It is inconceivable that Congress contemplated any such a situation. If the provisions of Section 33 apply to proceedings of this kind, which I very much doubt, and are in apparent conflict with the obvious duty of the court to respect rights guaranteed by the Constitution, it is clear that the provisions must give way in favor of the larger and more important considerations. A statute ought not to be given an unconstitutional construction or application. Moreover, it should always be kept in mind, as has been observed in this court and in other jurisdictions, that the court in proceedings of this kind is not called upon to determine title to or legal rights in the property unlawfully seized. United States v.

Mattingly, supra; Margie v. Potter, supra; United States v. Intoxicating Liquors, supra (Massachusetts case).

As a result of much deliberation and a careful examination of the authorities, I have reached the conclusion that it is the duty of the government to return liquor in its possession as a result of an unlawful search and seizure made by representatives·of the government, whether taken from a dwelling house or otherwise, in cases where the government has no evidence other than that secured by the unlawful search and seizure.

"In view of this conclusion, the petitioner is entitled to a return of the liquor, and I so order."

Our conclusion in this case is that to warrant confiscation and destruction of intoxicating liquor it must be shown that said liquor was in possession or being sold in violation of the statute and the mere fact that one lot of liquor is contraband does not alone establish the fact that all other intoxicating liquor then in possession of the person who has possession of such contraband liquor, or has unlawfully parted with the possession of such contraband liquor, is also contraband. Therefore, while the delivery of the one-fourth case of gin and the one-half case of rum by Dennis O'Higgins to Griffis in a dry county under facts such as are shown here may in proper proceedings warrant the confiscation of the liquor so delivered, those facts alone will not warrant the confiscation of other liquor then in possession of Dennis O'Higgins when the evidence shows conclusively that such other liquor was lawfully in the possession of Dennis O'Higgins and was so in his possession to be lawfully transported to a wet county.

Having reached this conclusion, it is probably not necessary for us to deal with any other question submitted but we take this occasion to say that our construction of Sec. 3, Article XIX of the Constitution as amended at the general election of November 6, 1934, which reads as follows:

"Section 3. Until changed by elections called under this Article, the status of all territory in the State of Florida as to whether the sale is permitted or prohibited shall be the same as it was on December 31, 1918, provided that at the general election in 1934 or at any time within two years after this Article becomes effective the board of county commissioners of any county shall, upon the application of five per cent of the registered voters of the county, call and provide for an election to decide whether the sale shall be prohibited in such county, said election to be otherwise as provided in Article I hereof.", is: that under this provision of the Constitution, counties retain that status as to being wet or dry which obtained in such county on December 31, 1918, until changed by the result of an election held in such county under the terms of the Constitution.

It is contended by the appellant that this provision of the Constitution in effect required an election to be held within two years after the amendment became effective for a dry county to retain its status, and that unless such election was held within two years after the amendment became effective, a county which was dry on December 31, 1918, automatically became a wet county. We do not agree with this contention. The status quo ante can only be changed by the result of an election. After the general election in 1934 for a period of two years from November 6, 1934, an election

for this purpose was required to be held upon the application of 5% of the registered voters of the county but, after that period the application of one-fourth of the registered voters of the county was required to warrant the calling of an election.

For the reasons stated, the decree appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, JJ., concur.